# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Woods v. Illinois Department of Employment Security***, 2012 IL App (1st) 101639

| | |
|---|---|
| Appellate Court Caption | ASHA WOODS, Plaintiff-Appellant, v. ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY; DIRECTOR OF ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY; BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY; and LEBER ENTERPRISES, INC., c/o ADP BENEFITS, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-1639 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | March 9, 2012<br><br>April 5, 2012<br>April 27, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Board of Review's decision finding that plaintiff was ineligible for unemployment benefits based on her poor attendance and failure to follow proper procedures was affirmed, since the Board's determination that her misconduct was connected with her work and disqualified her for unemployment benefits was not clearly erroneous. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-51296; the Hon. Elmer James Tolmaire, III, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Eugene Christopher Edwards, of Legal Assistance Foundation of Metropolitan Chicago, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Evan Siegel, Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Justices J. Gordon and Howse concurred in the judgment and opinion. |

**OPINION**

¶ 1       Plaintiff Asha Woods filed a complaint for administrative review seeking to reverse a decision by the Board of Review of the Illinois Department of Employment Security (Board) that she was ineligible to receive unemployment benefits because she was discharged for misconduct connected with her work. On appeal, plaintiff contends that the Board misinterpreted the statutory section regarding ineligibility based on misconduct; that as a matter of law, she was not discharged for misconduct; and that the Board's decision was against the manifest weight of the evidence and clearly erroneous. For the reasons that follow, we affirm.

¶ 2       Plaintiff was employed by Leber Enterprises, Inc. (Leber), a recruitment and placement agency that assigned plaintiff to a position as a temporary customer support specialist for a company called Pay Cycle in August 2008. Plaintiff worked at Pay Cycle for about six months, until she was discharged in February 2009. Following her termination from employment at Pay Cycle, plaintiff filed a claim for unemployment benefits. An Illinois Department of Employment Security (IDES) claims adjudicator denied plaintiff's claim, finding that she was disqualified under section 602(A) of the Illinois Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2008)), which provides that individuals discharged for misconduct are ineligible to receive unemployment benefits. The claims adjudicator found that plaintiff was discharged because of her poor attendance and failure to follow proper call-off procedures.

¶ 3       Plaintiff appealed, and a telephone hearing was held before an IDES referee.

¶ 4       At the telephone hearing, Leber's managing director, Angela Fabris, testified that plaintiff was discharged for violation of attendance policies. Fabris stated that in total, between August and February, plaintiff was late for work six times and absent seven times.

Fabris testified that Leber had provided plaintiff with a policy handbook that indicated, among other things, that an employee must notify both Leber and an on-site supervisor when taking time off from work. According to Fabris, despite this policy, plaintiff contacted Leber only four of the times she called off work.

¶ 5    Fabris testified that an on-site supervisor spoke with plaintiff and counseled her about her work attendance. In addition, Fabris stated that at Pay Cycle's request, she attempted to give plaintiff verbal warnings about her attendance, but plaintiff would not return her telephone messages. Accordingly, Fabris sent plaintiff an e-mail. In the e-mail, Fabris related to plaintiff that she wanted to "share some feedback" regarding her performance at Pay Cycle. In particular, Fabris noted reports that plaintiff had been arriving late without calling Leber or Pay Cycle and had been taking more frequent breaks and longer lunches than what she was reporting on her time sheet. Although she wrote in the e-mail that plaintiff's job was not in jeopardy, Fabris testified that "the point" of her e-mail was to bring up issues of tardiness, attendance, and long breaks. Fabris explained that she worded the e-mail positively because she wanted plaintiff to improve.

¶ 6    Plaintiff sent a reply e-mail to Fabris two days later. The entirety of plaintiff's e-mail was as follows: "This e-mail contains numerous false accusations that I already spoke to [a manager at Pay Cycle] about. My reply serves as acknowledgment that this e-mail was received only."

¶ 7    Fabris testified that after the exchange of e-mails, plaintiff called off work four more times and was late to work once and that that was when attendance became an issue. Pay Cycle related to Fabris that plaintiff was not receptive to feedback and the attendance issue had gotten worse, so they decided to end the assignment. Fabris explained that Pay Cycle's work was slowing down and the company chose to let plaintiff go because she was "the one that was having the most issues and wasn't following policy."

¶ 8    Fabris called plaintiff and left her a message, indicating that she "had to end her assignment." Plaintiff called Fabris back, and during the ensuing telephone conversation, Fabris told plaintiff that her discharge was due to "a combination of attendance and tardiness, production was slowing, they had to pick their best people to keep and since she was having so many issues, she was the one to like get let go." According to Fabris, plaintiff indicated she understood.

¶ 9    Plaintiff testified at the telephone hearing that no on-site supervisor ever counseled her regarding attendance. She asserted that Fabris only made two attempts to contact her by telephone and noted that she did respond to Fabris' e-mail. Plaintiff acknowledged that she had been absent from work seven times. Referencing a document that Fabris had attached to her e-mail to plaintiff, plaintiff noted that Pay Cycle's call-off policy was that employees were required to call a particular telephone number one hour before the start of their shifts. Plaintiff produced telephone records showing that she called that number on at least five mornings. She also testified that on two other dates, she was absent from work because she was sick. According to plaintiff, on the day following those sick days, she faxed documentation of her illness to Leber, which forwarded the notice to an on-site supervisor at Pay Cycle.

¶ 10 Plaintiff also produced a policy document indicating that employees would receive a documented verbal warning upon a sixth unplanned, unapproved absence; would receive a written warning for a seventh unplanned, unapproved absence within 90 days of the verbal warning; and, at the manager's discretion, would be subject to termination for any additional unplanned and unapproved absences. Plaintiff stated that she never received a verbal or written warning from Pay Cycle or Leber. She noted that Fabris' e-mail did not include any kind of warning regarding attendance but, instead, indicated that her job was not in jeopardy.

¶ 11 Plaintiff disputed the content of the telephone conversation she had with Fabris. According to plaintiff, Fabris told her she was going to be laid off due to the peak season being over and Pay Cycle's corresponding need for fewer staff members. Plaintiff stated that Fabris made no mention of attendance or performance during that conversation or at any other time. She stated that the only time attendance issues came up was in the e-mail from Fabris, but maintained that she had responded to the e-mail and disputed its "numerous false accusations."

¶ 12 Following the telephone hearing, the IDES referee affirmed the claims adjudicator's denial of plaintiff's claim for unemployment benefits. In the course of doing so, the referee stated that absences and tardiness can cause disruption to the general operations of any business, that an employer has a right to expect its workers to report to work as scheduled, and that an employer has a right to expect prompt notification of an absence. With regard to plaintiff, the referee found that she failed to demonstrate she was dependable, that her absences and tardiness had become excessive, and that her conduct amounted to misconduct as contemplated under section 602(A) of the Act. 820 ILCS 405/602(A) (West 2008). Based upon a preponderance of the evidence, the referee found that plaintiff was discharged for misconduct in connection with her work and was thus disqualified from receiving benefits.

¶ 13 Plaintiff appealed to the Board, which affirmed the referee's decision. The Board found the record adequate, determined that the referee's decision was supported by the record and the law, and incorporated the referee's decision as part of its own. Plaintiff thereafter filed a complaint for administrative review. The circuit court affirmed, finding that the Board's decision was not clearly erroneous.

¶ 14 On appeal, plaintiff contends the Board's decision that she was discharged for misconduct was based on a misinterpretation of section 602(A), was against the manifest weight of the evidence, was clearly erroneous, and was incorrect as a matter of law.

¶ 15 Ultimately, plaintiff's appeal centers around a legal issue, *i.e.*, whether misconduct must be the sole cause of an employee's discharge in order for her to be disqualified for benefits under section 602(A). Plaintiff has cited no authority directly on point, and our research has revealed no cases clarifying the issue. That said, the language of the statute speaks for itself. Section 602(A) provides that an individual is ineligible to receive benefits if she was "discharged for misconduct connected with [her] work." 820 ILCS 405/602(A) (West 2008). It does not indicate that the reason for discharge must be "only" or "solely" misconduct, and we decline to read such a requirement into the statute. See *Land v. Board of Education*, 202 Ill. 2d 414, 426 (2002) ("where the language of a statute is clear and unambiguous, a court must give it effect as written, without reading into it exceptions, limitations, or conditions

that the legislature did not express").

¶ 16    In an appeal involving a claim for unemployment benefits, we defer to the Board's factual findings unless they are against the manifest weight of the evidence. *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 556 (2006). An administrative agency's findings of fact are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). In our role as a reviewing court, we may not judge the credibility of the witnesses, resolve conflicts in testimony, or reweigh the evidence. *White v. Department of Employment Security*, 376 Ill. App. 3d 668, 671 (2007). If there is any evidence in the record to support the Board's decision, that decision is not contrary to the manifest weight of the evidence and must be sustained on review. *James L. Hafele & Associates v. Department of Employment Security*, 308 Ill. App. 3d 983, 986 (1999).

¶ 17    In this case, the Board acknowledged that Pay Cycle was reducing its staff due to economic reasons, yet made a factual finding that plaintiff was discharged because her tardiness and absences had become excessive. This factual finding has support in the record. In six months of employment, plaintiff was late for work six times and called off work seven times. At the telephone hearing, Fabris testified that plaintiff's discharge was premised on "a combination of her attendance, her tardiness and performance." She stated that Pay Cycle had asked her to warn plaintiff about her attendance. After she did so, the attendance issue got worse, and Pay Cycle determined plaintiff was not receptive to feedback and decided to end her assignment. Fabris testified that in the course of breaking this news to plaintiff, she told plaintiff the discharge was due to "a combination of attendance and tardiness, production was slowing, [Pay Cycle] had to pick their best people to keep and since she was having so many issues, she was the one to like get let go."

¶ 18    We defer to the Board's finding that plaintiff was discharged because of attendance issues. While some evidence exists that economic factors may have played a part in the timing of plaintiff's discharge from employment, a decision opposite to that of the Board is not clearly evident. Evidence exists in the record to support the Board's finding that plaintiff was discharged due to her excessive tardiness and absences. Accordingly, the Board's factual findings are not against the manifest weight of the evidence.

¶ 19    Three main requirements must be met to establish misconduct under the Act. It must be proven that (1) there was a deliberate and willful violation of a rule or policy of the employing unit, (2) the rule or policy was reasonable, and (3) the violation either harmed the employer or was repeated by the employee despite a previous warning or other explicit instruction from the employing unit. 820 ILCS 405/602(A) (West 2008); *Manning*, 365 Ill. App. 3d at 557. Whether an individual was properly terminated for misconduct in connection with her work is a question that involves a mixed question of law and fact, to which we apply the clearly erroneous standard of review. *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 327 (2009). An agency's decision is considered to be clearly erroneous where the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

¶ 20    In this case, Leber presented evidence of the existence of a reasonable policy regarding attendance at work. Leber also presented evidence that plaintiff was made aware of the policy. Nevertheless, in the six months of her employment, plaintiff was late to work six times and called off work seven times. Additionally, plaintiff received a warning in January 2009 regarding her attendance and was instructed that the proper call-in procedure was to call both Pay Cycle and Leber. Plaintiff was absent on both February 10 and 11, 2009. Although plaintiff presented evidence that she was absent due to illness on those days, she failed to follow the proper procedure mentioned above to report those absences. These circumstances support a finding that plaintiff deliberately and willfully violated a reasonable work rule or policy.

¶ 21    As to the third element of misconduct, we note that IDES regulations indicate "harm" includes damage or injury to other employees' well-being or morale or to the employer's operations or goodwill. 56 Ill. Adm. Code 2840.25(b) (2012). The regulations explain that "[a]bsences and tardiness always cause harm to the employer" "because absences and tardiness cause disruption to the general operations of any business." 56 Ill. Adm. Code 2840.25(b) (2012). In light of these regulations, we find that evidence of harm existed in the record, even though Fabris did not testify as to this element.

¶ 22    After reviewing the entire record, we cannot say, definitively and firmly, that the Board made a mistake. The Board's determination that plaintiff's excessive absences and tardiness constituted misconduct connected with work so as to disqualify her for unemployment benefits was not clearly erroneous.

¶ 23    For the reasons explained above, we affirm the judgment of the circuit court of Cook County.

¶ 24    Affirmed.