2019 IL App (1st) 181722-U

No. 1-18-1722

Order filed November 14, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| KIMBERLY GREEN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY, | ) | No. 18 L 50299 |
| THE DIRECTOR OF EMPLOYMENT SECURITY, THE | ) | |
| BOARD OF REVIEW, and SPEEDWAY LLC c/o | ) | |
| EQUIFAX (TALX UCM SERVICES), | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where plaintiff was discharged for misconduct connected with her work, the Board of Review's denial of unemployment insurance benefits is affirmed.

¶ 2    Plaintiff Kimberly Green appeals *pro se* from an order of the circuit court of Cook County affirming a final administrative decision by defendant, the Board of Review of the Department of Employment Security (Board). The Board found that plaintiff was discharged for

misconduct connected with her work, and thus, ineligible for unemployment insurance benefits. On appeal, plaintiff challenges the denial of benefits. We affirm.

¶ 3     The record shows that plaintiff was employed as a customer service representative with Speedway LLC from October 3, 2017, until January 12, 2018, when she was discharged. Plaintiff applied to the Department of Employment Security (Department) for unemployment insurance benefits. Plaintiff reported that she was discharged by her manager, Katrina Brown, because she redeemed rewards points she had accumulated from purchases she had made for a free item. Plaintiff stated that she was told that her action constituted stealing. Plaintiff acknowledged that there was a company policy regarding her action, but she was unaware that she could be discharged for not complying with the policy.

¶ 4     Speedway protested plaintiff's claim for benefits. Kathleen McCarthy, an unemployment state consultant with Equifax TALX UCM Services, Speedway's authorized agent, submitted a written response to the Department stating that plaintiff was discharged for violating the company's reasonable and known Speedy Rewards Policy. Speedway has a customer loyalty program called Speedy Rewards. Pursuant to the Speedy Rewards Policy, an employee's Speedy Rewards card must only be used on his or her own personal transactions. An employee's improper use of a Speedy Rewards card is subject to disciplinary action up to and including discharge. Plaintiff had been made aware of the policy both verbally and in writing.

¶ 5     McCarthy explained that a manager received a report indicating a possible violation of the Speedy Rewards Policy. Upon investigation, it was revealed that when plaintiff completed sales transactions with customers, rather than asking the customers for their Speedy Rewards cards, plaintiff scanned her own personal Speedy Rewards card for the purchases. McCarthy

further explained that if a customer did not have a Speedy Rewards card, plaintiff was supposed to explain the benefits of the loyalty program to the customer and offer him or her a free Speedy Rewards card. If a customer declined the card, plaintiff was not allowed to scan her personal card for the transaction. By scanning her own personal card for other customers' transactions, plaintiff fraudulently received Speedy Rewards loyalty points and coupons that belonged to the customers. Plaintiff then redeemed coupons that had been earned by other customers for her own personal use. Plaintiff thereby prevented Speedway's customers from receiving the benefits of participating in the Speedy Rewards loyalty program.

¶ 6    McCarthy attached several documents from Speedway to the written protest. Speedway's Employee Agreement stated that the company provided comprehensive training on job responsibilities as well as its policies, procedures and Code of Business Conduct. The document stated that every employee had access to the online Operations Manual that contained the policies and procedures, and the Code of Business Conduct. Employees were expected to understand and follow the contents of the Manual and Code. The agreement stated that any violation of the law and/or company policies and procedures would result in disciplinary action up to and including termination. The company's Employee Policy Statement also included an acknowledgment that the employee understood that failure to comply with any of the policies could result in termination.

¶ 7    Also attached were two pages from Speedway's customer service representative training manual that discussed the procedures to be followed for the Speedy Rewards program. The manual stated "On every transaction, the CSR must **ASK** the customer if he/she has a Speedy Rewards card." The manual provided the procedures to follow when a customer had or did not

have a card. The training manual expressly stated "**REMEMBER** An employee's personal Speedy Rewards card must only be used on his/her own personal transactions. Any employee's improper use of a Speedy Rewards card will be subject to disciplinary action up to and including termination."

¶ 8    In addition, McCarthy attached pages from the Operations Manual that provide Speedway's policy regarding unsatisfactory performance and termination. The policy states that major infractions of established policies and/or procedures could result in immediate termination. The policy further states "Where an associate engages in a willful or intentional act or behavior not in the Company's best interests, discharge from employment will often be the Company's responsive course of action." The policy lists examples of this type of misconduct including dishonesty and theft.

¶ 9    Finally, McCarthy attached an "HR Master Data Report" for plaintiff which indicated her dates of employment with Speedway, and that she was an hourly part-time employee at the store located in Oak Lawn. The report indicated that plaintiff's last day of employment with Speedway was January 12, 2018, and her reason for separation was "Disciplinary Termination" due to a violation of company policy. The report also stated "speedy fraud."

¶ 10    A Department claims adjudicator conducted an initial telephone interview with plaintiff to assess her eligibility for benefits. During the interview, plaintiff stated that she was discharged because she had redeemed points in the store for a free water and chips. Plaintiff stated that she was told by the manager, Brown, that by redeeming the points from every purchase she had made that she was stealing. The claims adjudicator read Speedway's protest to plaintiff which indicated that she had scanned her rewards card for other customers' purchases and received

coupons and free items as a result. Plaintiff replied that she would ask a customer if he or she had a rewards card. If the customer did not, plaintiff would scan a new rewards card for the customer. Some customers took the card, but others would not take it. If a customer declined the card, plaintiff put that card aside. Plaintiff denied that she scanned her own card for other customers' purchases. She stated that she scanned her personal rewards card for her own purchases. Plaintiff also stated that the store had video surveillance with microphones, so she knew that the employees were being watched. Plaintiff admitted that she was aware of Speedway's policy that she was allowed to ring up her own items and scan her rewards card for her own purchases, but that it was considered stealing if she used her own card on other customers' purchases. Plaintiff learned of the policy during orientation.

¶ 11    After speaking with plaintiff, the claims adjudicator telephoned Equifax, Speedway's agent, and spoke with a representative named Cheryl, who confirmed the information contained in the written protest. Cheryl stated that plaintiff was discharged for violating Speedway's reasonable policy regarding improper use of a Speedy Rewards card. Plaintiff was made aware of the policy through the employee handbook when she was hired. Plaintiff's act of violation occurred on December 24, 2017.

¶ 12    The claims adjudicator issued a written determination finding that the evidence showed that plaintiff was discharged from Speedway because she used her own loyalty card to redeem points on other customers' purchases. The adjudicator further found that the reason plaintiff was discharged constituted a violation of a known and reasonable company policy. The adjudicator therefore determined that plaintiff was discharged for misconduct connected with her work as defined by section 602(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/602(A)

(West 2016)). Consequently, the claims adjudicator concluded that plaintiff was ineligible to receive unemployment insurance benefits.

¶ 13    Plaintiff filed a written request for reconsideration of the claims adjudicator's determination, and an appeal to the Department referee. Plaintiff stated that Speedway employees scan numerous rewards cards daily, and some employees give free coupons to customers. Plaintiff stated that if a customer declines a card, the card is left at the store and scanned again. Plaintiff asserted that she never registered her rewards card and questioned "how would they know that it was my card." Plaintiff stated that she received her rewards card prior to being employed at Speedway, she had it for a year, and she never redeemed her points until she was working at Speedway. Plaintiff stated that she frequently purchased snacks while she was working, and she finally redeemed her points for a bag of chips and a water. Plaintiff asserted that to fire her and compliment her at the same time showed that "something else" was wrong.

¶ 14    After reconsideration, the claims adjudicator again concluded, based on her original factual findings and reasoning, that plaintiff was discharged for misconduct connected with her work, and therefore, ineligible to receive benefits. Plaintiff's appeal was then filed with the Department referee for a telephone hearing.

¶ 15    An administrative law judge (ALJ) conducted a telephone hearing to consider plaintiff's appeal. Brown testified under oath that Speedway's security personnel sent her a form to investigate for possible "speedy fraud" that occurred from December 17, 2017, through December 24, 2017. During that time, Speedway counted 31 transactions totaling $690.78 that were scanned on plaintiff's rewards card for purchases made by several other customers. The transactions scanned to the rewards cards are tracked. Speedway determined that plaintiff did not

personally make purchases totaling $690.78 during that time period. Brown asked plaintiff if she used her rewards card for other customers' purchases, and plaintiff admitted that she did. Brown explained that when employees are hired, they are verbally told during training that they can use their Speedy Rewards card when they make their own purchases, but cannot use their cards for other customers' purchases. Based on plaintiff's use of her rewards card for other customers' purchases, a coupon was generated, and plaintiff redeemed that coupon. Brown testified that Speedway's policy states that if an employee redeems an offer using her own rewards card for another customer's purchase it is grounds for automatic termination.

¶ 16    Plaintiff testified that she did not use her own rewards card for other customers' purchases, and she denied admitting to Brown that she did so. She used her card only for her own purchases. Plaintiff testified that she was "not sure" if she made $690.78 worth of purchases during December 17 through 24 because she did not keep track of her purchases. She explained that because the store is a convenience store and gas station that is open 24 hours, employees are not allowed to leave the premises while working. Therefore, plaintiff purchased items such as water and chips to snack on while she was working. Every time plaintiff made a purchase at work, she had her receipts handy. On prior occasions, plaintiff offered to show Brown her receipts, but Brown replied "It's fine, it's okay."

¶ 17    In rebuttal, Brown testified that she was involved in the investigation of the possible fraud. Brown and another assistant reviewed the surveillance video recorded by the cameras inside the store for the time period in question. Brown observed plaintiff in the surveillance video scanning her card while processing purchases made by other customers.

¶ 18     Plaintiff asked Brown how she knew that the card she was scanning was her own card. Plaintiff stated that she had her card for a year and never registered it. She further stated that the cards scanned for the customers were recycled daily. Brown replied that the card plaintiff used was sitting on the side of her cell phone, and she was observed scanning that same card continuously. When a coupon was generated, plaintiff was observed wrapping the coupon around the card she had been using, and placed it inside her pocket.

¶ 19     Plaintiff acknowledged that she redeemed a coupon for a free item, and asked Brown how that constituted stealing. Brown explained that it was considered stealing because plaintiff did not make the purchase for the coupon she redeemed. The purchase was made by a customer, not plaintiff.

¶ 20     Plaintiff further testified that she sometimes had her rewards card inside her pocket, but she never left her card sitting outside the cash register. She never left her personal card sitting out because it could get mixed in with the other rewards cards. Plaintiff also stated that she always had her small keychain card on her. Brown replied that the card plaintiff was observed scanning was not with the rest of the Speedy Rewards cards. When plaintiff was observed wrapping the coupon around the card and placing it inside her pocket, management determined that card plaintiff had been using was her own.

¶ 21     The ALJ issued a written decision affirming the claims adjudicator's determination, and finding plaintiff not eligible for unemployment insurance benefits. The ALJ found that a preponderance of competent and compelling evidence established that plaintiff willfully and deliberately violated a known and reasonable policy of her employer. Specifically, the ALJ found that plaintiff's actions violated Speedway's policies with respect to the use of rewards

cards and constituted misconduct connected with her work. Accordingly, pursuant to section 602(A) of the Act, plaintiff was not eligible for benefits.

¶ 22    Plaintiff appealed the ALJ's decision to the Board. Plaintiff stated that employees are allowed to ring up their own purchases and be able to present proof of purchase when asked. She again stated that she had received her rewards card prior to working at Speedway, had the card for a year, and had already accumulated points on her card. Plaintiff never registered her card. While working at Speedway, plaintiff always purchased snacks with cash or her SNAP EBT card. Plaintiff asserted that if she had scanned nearly $800 in purchases, she would have redeemed many more coupons. Plaintiff stated that she believes she was fired because the store had to let someone go due to budgetary reasons or other employee issues. She further stated that she received text messages from her manager telling her that she did good work and asking her to work on her days off. Plaintiff asked why she never received a warning and was never questioned about her purchases. She asserted that firing her because she finally received a coupon for her purchases was "crazy." Plaintiff also asserted that if management believed that something "fishy" was occurring, there should have been more communication when she offered to show them her receipts. Plaintiff submitted with her appeal printouts of the electronic transaction activity reflecting SNAP purchases she made on her Illinois EBT Link Card for October, November and December 2017. The printouts show that plaintiff made between 9 and 11 purchases at Speedway with her EBT Link Card each of those months. The amount of those purchases is not reflected on the printouts.

¶ 23    The Board reviewed the record, including the transcript from the telephone hearing. It found that the record adequately set forth the evidence, and that no further evidentiary

proceedings were necessary. In its factual findings, the Board stated that plaintiff was discharged after her employer determined that she used a customer loyalty card to accumulate points and rewards for purchases that were made by customers. The Board noted that the employer's policies allowed employees to have their own loyalty cards, but provided that employees could use their cards only for their own personal purchases. The Board found that the policies further provided for termination of employment for a single violation of the policy. The Board noted that the employer's investigation into plaintiff's use of a loyalty card showed that it was scanned for 31 transactions between December 17 and 24, 2017, and that the amount of those transactions totaled $690.78. The Board found that although plaintiff denied that she scanned her own loyalty card when ringing up other customers' purchases, she could not explain the total amount spent on the transactions that occurred over the span of one week when her card was scanned more than 30 times. It further found that the preponderance of the evidence supported the conclusion that plaintiff deliberately and willfully violated her employer's policies. Accordingly, the Board found that, pursuant to section 602(A) of the Act, plaintiff's actions constituted misconduct connected with her work. The Board concluded that the ALJ's decision that plaintiff was not eligible for benefits was supported by the record and the law, and affirmed that decision.

¶ 24    Plaintiff appealed the Board's ruling to the circuit court of Cook County. On August 9, 2018, the circuit court entered an order stating that it held a hearing, and that the decision of the Board was affirmed.

¶ 25    On appeal, plaintiff, *pro se*, challenges the denial of benefits by the Board. Plaintiff contends that she was wrongly accused of redeeming a customer's coupon. She argues that the Board erred in rendering its decision because it was not aware of Speedway's redemption policy

on purchases which requires a person to purchase six of the same item to receive a coupon. Plaintiff further argues that the Board erred by not investigating the transactions she presented which show that she made several purchases at the store each month, and the amounts of those purchases should have been totaled. Plaintiff asserts that if she had scanned her rewards card for over $750, she would have earned more than one coupon. Plaintiff claims that if a customer did not have a rewards card or was not interested in receiving one, she was trained that she should still scan a card anyway, and those cards were recycled until a customer would finally accept it.

¶ 26    Defendants respond that the Board's factual finding that plaintiff used her personal Speedy Rewards card on other customers' purchases to accumulate points and rewards for herself was not against the manifest weight of the evidence. Defendants argue that the Board implicitly found that Brown's testimony was more credible than plaintiff's, and thus, plaintiff's claim that she would have received more coupons did not have to be believed. Defendants point out that the printouts of the SNAP transactions plaintiff submitted to the Board did not show the amounts for any of her purchases, nor did they show if plaintiff scanned her rewards card when she made those purchases. Defendants further argue that plaintiff's claim that she was trained to scan a rewards card even if the customer did not want one is a new argument being raised for the first time on appeal, and thus, is forfeited. In addition, defendants argue that the Board's final decision that plaintiff was discharged for misconduct connected with her work was not clearly erroneous where the evidence showed that she was aware of Speedway's reasonable policy prohibiting employees from using their own personal Speedy Rewards cards on other customers' purchases, and deliberately and willfully violated that policy.

¶ 27    Initially, we observe that plaintiff's *pro se* brief fails to comply with the requirements in Supreme Court Rule 341(h) (eff. May 25, 2018) and Rule 342 (eff. July 1, 2017). Plaintiff used the form brief approved by the Illinois Supreme Court. However, her brief is completely devoid of any facts, legal argument, and citation to legal authority. Based on plaintiff's noncompliance with these rules, her appeal is subject to dismissal. *Marzano v. Department of Employment Security*, 339 Ill. App. 3d 858, 861 (2003). Nevertheless, because the issue is apparent, and we have the benefit of a cogent appellees' brief (see *Twardowski v. Holiday Hospitality Franchising, Inc.,* 321 Ill. App. 3d 509, 511 (2001)), we choose to entertain the appeal (see *Harvey v. Carponelli*, 117 Ill. App. 3d 448, 451 (1983)).

¶ 28    It is well established that an issue or argument not presented at an administrative hearing is waived and cannot be raised for the first time before the court. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002). Our review is confined to the issues, arguments and evidence that were presented before the Board. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278-79 (1998).

¶ 29    Here, the record shows that plaintiff never raised any argument or evidence before the Board claiming that she was trained to scan a rewards card even if the customer did not want one until a customer finally accepted it. Plaintiff has raised this argument for the first time on appeal. Accordingly, plaintiff waived this argument and we decline to consider it any further. See *Texaco-Cities*, 182 Ill. 2d at 278.

¶ 30    Plaintiff is challenging the denial of unemployment insurance benefits. This court reviews the final decision of the Board rather than that of the circuit court. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22. The Board's factual findings are

considered *prima facie* true and correct, and will not be disturbed unless they are against the manifest weight of the evidence. *520 South Michigan Avenue Associates v. Department of Employment Security*, 404 Ill. App. 3d 304, 312 (2010). Under this standard, the Board's factual findings "must stand unless 'the opposite conclusion is clearly evident.' " *Id.* at 313 (quoting *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998)). Where the record contains any evidence that supports the Board's factual findings, they are not against the manifest weight of the evidence and must be sustained. *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16.

¶ 31    It is the Board's responsibility to weigh the evidence, determine the credibility of the witnesses, and resolve conflicts in the testimony. *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 329 (2009). Reviewing courts are precluded from reweighing the evidence, resolving conflicts in the testimony, or evaluating the credibility of the witnesses. *Woods*, 2012 IL App (1st) 101639, ¶ 16. Nor may a reviewing court substitute its judgment for that of the Board. *520 South Michigan Avenue*, 404 Ill. App. 3d at 317. If the issue on review merely involves conflicting testimony and witness credibility, the Board's determination should be sustained. *Id.* at 318.

¶ 32    Whether an employee was properly terminated due to misconduct, and thus, ineligible for unemployment benefits, is a mixed question of law and fact that is reviewed under the clearly erroneous standard. *Petrovic*, 2016 IL 118562, ¶ 21. The Board's decision is clearly erroneous where the court reviews the record and definitively concludes that a mistake has been made. *Id.*

¶ 33    Under section 602(A) of the Act, a person who is discharged by her employer for misconduct connected with her work is not eligible to receive unemployment insurance benefits. *Id.* ¶ 25. The Act defines "misconduct" as:

> "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602(A) (West 2016); *Petrovic*, 2016 IL 118562, ¶ 25.

¶ 34    Here, we find that the Board's determination that plaintiff used her own Speedy Rewards loyalty card on other customers' purchases to accumulate points and rewards for herself was not against the manifest weight of the evidence. At the telephone hearing, Brown testified that she received a form from Speedway's security personnel to investigate for possible "speedy fraud" that occurred from December 17, 2017, through December 24, 2017. While reviewing the store's surveillance video for that time period, Brown observed plaintiff scanning her personal rewards card while she processed purchases made by other customers. Brown testified that the video showed plaintiff repeatedly scanning the same rewards card that was sitting on the side of her cell phone. The video further showed that when a coupon was generated, plaintiff wrapped the coupon around the card she had been using and placed it inside her pocket. It is undisputed that plaintiff redeemed that coupon.

¶ 35    Brown testified that in addition to the video, further investigation by Speedway revealed that during that same time period, there were 31 transactions totaling $690.78 that were scanned on plaintiff's rewards card for purchases made by several other customers. Speedway determined

that plaintiff did not personally make purchases totaling $690.78 during that time period. Brown testified that she confronted plaintiff and asked her if she used her rewards card for other customers' purchases. Plaintiff admitted that she did.

¶ 36    The record shows that plaintiff testified at the telephone hearing that she did not use her own rewards card for other customers' purchases, and she denied admitting to Brown that she did so. However, plaintiff further testified that she was "not sure" if she made $690.78 worth of purchases during the week in question because she did not keep track of her purchases. Consequently, the Board found that plaintiff was unable to explain the total amount spent on the transactions that occurred over the span of one week when her rewards card was scanned more than 30 times. Based on its ruling, the Board found plaintiff's testimony not credible. It was the Board's responsibility to determine the credibility of plaintiff's and Brown's testimony, and this court will not disturb that determination. *Woods*, 2012 IL App (1st) 101639, ¶ 16; *520 South Michigan Avenue*, 404 Ill. App. 3d at 318.

¶ 37    The Board further found that the preponderance of the evidence supported the conclusion that plaintiff deliberately and willfully violated Speedway's policy on the use of the Speedy Rewards card. The record shows that Speedway had a clearly defined policy that expressly prohibited employees from scanning their own rewards cards for purchases made by other customers. Plaintiff acknowledged that she was aware of this policy. Brown testified that plaintiff's actions were considered stealing because plaintiff did not make the purchase for the coupon she redeemed. Plaintiff's conduct thereby caused harm to her employer. Based on the evidence presented, the Board concluded that plaintiff's actions constituted misconduct connected with her work as defined by section 602(A) of the Act.

¶ 38    Our review of the record reveals that an opposite conclusion is not clearly evident, and therefore, we will not disturb the Board's findings. *520 South Michigan Avenue*, 404 Ill. App. 3d at 313. Accordingly, the Board's determination that plaintiff was discharged for misconduct and not eligible for unemployment insurance benefits was not clearly erroneous. *Petrovic*, 2016 IL 118562, ¶ 21.

¶ 39    For these reasons, we affirm the judgment of the circuit court of Cook County affirming the Board's decision.

¶ 40    Affirmed.