2021 IL App (1st) 191993-U

No. 1-19-1993

Order filed August 25, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| YOLANDA SMOTHERS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 19 L 50320 |
| DEPARTMENT OF EMPLOYMENT SECURITY; | ) | |
| DIRECTOR OF EMPLOYMENT SECURITY; BOARD | ) | Honorable |
| OF REVIEW; and DAYSPRING JANITORIAL | ) | Michael F. Otto, |
| SERVICES INC., | ) | Judge, presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Howse and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirmed. Board's decision affirming denial of plaintiff's unemployment benefits was not clearly erroneous, as record demonstrated that employer appropriately discharged plaintiff for consistent tardiness.

¶ 2    Plaintiff Yolanda Smothers appeals *pro se* from an order of the circuit court affirming a

decision entered by the Board of Review (Board) of the Department of Employment Security

(Department), which affirmed a referee's decision to overturn a claims adjudicator's award of unemployment benefits to plaintiff. Said differently, the Board affirmed the referee's decision that Smothers was properly terminated for tardiness and thus ineligible for unemployment benefits. On appeal, Smothers argues that the Board erred because her employer, Dayspring Janitorial Services Inc. (Dayspring), did not properly discharge her for misconduct. We affirm.

¶ 3    On February 17, 2019, Smothers applied for unemployment benefits. In her misconduct questionnaire, Smothers stated that she started working for Dayspring on July 23, 2015 and was discharged by Dayspring without explanation on February 12, 2019. Smothers stated that Dayspring later informed her that she was discharged because of late arrivals to work. She received a verbal warning on August 22, 2018, for previous instances of late arrivals.

¶ 4    On February 27, 2019, Dayspring filed a written opposition to Smothers's claim. Dayspring claimed that Smothers arrived late for her shift on August 2, 2018; January 2, 11, and 14, 2019; and February 8, 2019.  Dayspring attached documents to its response, including a written warning dated August 17, 2018, that it gave to Smothers which indicated Smothers arrived late for work seven times between the period of June 8, 2018, to August 2, 2018. Smothers and Dominique McGee, a human resources manager for Dayspring, both signed the document.

¶ 5    Dayspring also attached its attendance policy, which stated that an employee is "late" if he or she does not clock into work within the first five minutes of a shift. Smothers signed the policy on July 23, 2015, the day she began her employment. The policy states that three instances of late arrival in a six-month period will lead to a written warning, and subsequent late arrivals may result in "further discipline up to and including termination." Finally, Dayspring attached Smothers's

signed termination letter dated February 15, 2019, that listed 15 late arrivals between September 6, 2018, and February 8, 2019.

¶ 6    On March 8, 2019, a claims adjudicator granted Smothers's claim. The claims adjudicator spoke with Smothers on the phone prior to the decision but did not speak to anyone from Dayspring and relied instead on Dayspring's written response. In the determination, the claims adjudicator conceded that Dayspring discharged Smothers for attendance policy violations and had warned her in writing prior to discharge, but the warning did not state that "if she was absent again, she could be discharged." The adjudicator also found that Smothers "had no other documented attendance issues" from August 21, 2018, until February 12, 2019, and concluded that Smothers's conduct did not constitute misconduct under section 602(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2018)).

¶ 7    On March 18, 2019, Dayspring appealed the decision, alleging that Smothers violated the attendance policy repeatedly after the written warning of August 21, 2018. Dayspring attached Smothers's written acknowledgement of receipt of Dayspring's policy manual, dated July 23, 2015, as well as the termination letter and the attendance policy.

¶ 8    On April 4, 2019, a referee conducted a telephone hearing with Smothers and Morgan Richardson, an operations manager from Dayspring. Richardson testified that on February 12, 2019, Dayspring terminated Smothers due to "tardiness." Smothers knew about Dayspring's written attendance policy, because Dayspring informed her of the policy at orientation and annually thereafter. Dayspring warned Smothers regarding late arrivals prior to discharging her, including once in writing in August 2018. According to Richardson, the written warning informed

Smothers that she could be disciplined or discharged for subsequent late arrivals. Smothers signed the warning, but then arrived late an additional 15 times.

¶ 9     Smothers testified that she had "doctor's statements" for "half" of the late arrivals but had not provided the referee with the statements. She arrived late on February 8, 2019, because she did not have her keycard. She did not remember why she arrived late on January 11 or 14, 2019. She further stated that "some" of the late arrivals occurred because she arrived early, did not clock in, and then forgot to clock in later. According to Smothers, at the time of discharge, a Dayspring official told her that Dayspring did not have a reason for the discharge and also said that if she did not sign the notice of termination form, Dayspring would not "give" her unemployment benefits.

¶ 10    On April 5, 2019, the referee reversed the claims adjudicator's award and denied Smothers's claim for unemployment benefits. The referee found that Smothers had "multiple incidents of tardiness" after she received the written warning. He concluded that Smothers's tardiness was excessive, and the reasons were within her control, which evinced "deliberate and willful disregard."

¶ 11    On April 9, 2019, Smothers appealed to the Board. Smothers attached documents to the appeal, including medical records and handwritten explanations of specific late arrivals. The record does not contain a certification that she served the documents on Dayspring.

¶ 12    On June 5, 2019, the Board denied Smothers's appeal. The Board declined to consider the documents Smothers's attached to her appeals because she did not certify that she served these documents on Dayspring. The Board found that Dayspring warned Smothers regarding "excessive tardiness" on August 22, 2018, and Smothers then arrived late 15 more times, which constituted misconduct such that she was ineligible for unemployment benefits following discharge under

section 602(A)(3) of the Act. See 820 ILCS 405/602(A)(3) (West 2018). The Board further found that Smothers failed to present credible testimony or evidence that she made a reasonable effort to remedy the reasons for her late arrivals, and that the reasons were not out of her control.

¶ 13     On June 11, 2019, Smothers filed a complaint for administrative review in the circuit court appealing the Board's decision. On September 11, 2019, the circuit court affirmed the Board's decision. Smothers timely appealed.

¶ 14     On an appeal from the denial of unemployment benefits, this court reviews the decision of the Board. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22. Here, the Board concluded that Smothers was ineligible for benefits under section 602(A)(3) of the Act because she was discharged for misconduct. The question of a whether an unemployment benefits claimant committed misconduct presents a mixed question of law and fact that we review under the clearly erroneous standard. *Petrovic*, 2016 IL 118562, ¶ 21. We may reverse a decision for clear error only if we are " 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. Unites States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 15     Under Section 602(A)(3) of the Act, an employee is ineligible for unemployment benefits if he or she (1) knowingly and repeatedly violated an attendance policy, (2) the policy was reasonable and complied with state and federal law, (3) the employer gave the employee a written warning, and (4) the employer provided the attendance policy to the employee in writing. 820 ILCS 405/602(A)(3) (West 2018). This subsection does not apply if the employee demonstrates that (1) she made reasonable efforts to remedy the situation or (2) the conditions causing the attendance violations were out of her control. *Id.*

¶ 16    Here, the record shows that Dayspring hired Smothers in July 2015, at which time Dayspring informed her in writing of its attendance policy. The policy required employees not to arrive more than five minutes late and stated that three violations of this policy in a six-month period would incur a written violation, with any subsequent violations potentially leading to additional discipline including termination. Smothers violated the policy at least seven times prior to August 17, 2018. Dayspring warned Smothers in writing regarding the violations, and Smothers signed the warning. Smothers then incurred 15 more unexcused violations between August 17, 2018, and her discharge on February 12, 2019. Smothers claimed during the telephone hearing that she had doctor's statements for certain dates and that her late arrival was excused in other instances, but she did not provide evidence to support these claims.

¶ 17    Based on this record, the Board did not commit clear error. The evidence shows that Smothers's conduct satisfied the standard for misconduct under Section 602(A)(3) of the Act. First, there is no dispute that Smothers knew of Dayspring's attendance policy and violated it repeatedly both before and after the August 2018 warning. And Smothers does not claim that the policy was unreasonable or did not comply with federal or state law; in any event, this court has deemed similar attendance policies reasonable. See, *e.g.*, *Woods v. Department of Employment Security*, 2012 IL App (1st) 101639, ¶¶ 10, 20 (employer's attendance policy was reasonable where six absences resulted in written warning and subsequent absences could result in termination at "manager's discretion").

¶ 18    Finally, there is also no dispute that Smothers received the policy in writing, and though the written warning itself did not explicitly state that Smothers faced termination for future violations, it referenced the Dayspring attendance policy, which states that an employee may be

discharged for attendance policy violations subsequent to a written warning. Smothers does not dispute that she knew about this policy and received it in writing.

¶ 19   The Board also correctly determined that Section 602(A)(3)'s exceptions do not apply here. First, the record shows no evidence that Smothers made reasonable efforts to remedy her late arrivals. Smothers arrived to work late on multiple occasions without any excuse after August 17, 2018, and it was reasonable for the Board to conclude that this conduct demonstrated an unwillingness to alter her behavior. Second, Smothers did not demonstrate that the conditions causing her late arrivals were beyond her control. Even accepting that certain instances of late arrivals were due to illness or were excused by her supervisor, as she claimed without evidence, it is undisputed that Smothers provided no explanation for unexcused late arrivals on January 4, 2019, or January 11, 2019, which both occurred after Dayspring warned her in writing.

¶ 20   Finally, we note that the Board declined to consider the documents and handwritten statements Smothers filed with her appeal to the Board because she did not certify that she served the documents on Dayspring. A party wishing to include new documentation in an appeal to the Board must certify that it served the proposed new documents on the opposing party. 56 Ill. Adm. Code 2720.315(c) (2019). There is no certification in the record that Smothers served the proposed new documents on Dayspring here. The Board correctly declined to consider them.

¶ 21   Finding no clear error in the Board's decision, we concur with the circuit court and affirm its judgment.

¶ 22   Affirmed.