2026 IL App (1st) 250089-U

No. 1-25-0089

Order filed May 15, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ROSEMANE PIERVIL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 24 L 50036 |
| THE DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY, THE DIRECTOR OF EMPLOYMENT | ) | |
| SECURITY, THE BOARD OF REVIEW, and | ) | |
| ALDEN HEATHER REHAB & HEALTHCARE, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the final administrative decision of the Board of Review of the Department of Employment Security determining that plaintiff's misconduct makes her ineligible for unemployment insurance benefits.

¶ 2     Plaintiff Rosemane Piervil appeals from an order of the circuit court affirming the final administrative decision of the Board of Review of the Department of Employment Security

(Board), finding Piervil was ineligible for unemployment insurance benefits under section 602(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2022)) because she was discharged for misconduct. On appeal, Piervil contends that she was discharged based on a "forged accusation" and that the Board ignored her facts. We affirm.

¶ 3    Piervil worked as a nurse at Alden Heather Rehab & Healthcare (Alden) between August 17, 2022, and May 15, 2023. She thereafter applied for unemployment insurance benefits and completed a "Misconduct Questionnaire." In the questionnaire, Piervil stated she claimed harassment and discrimination. She reported being threatened with termination if she did not work weekends, was accused of leaving work early despite working more than eight hours that day, and said she provided proper notice of being sick between May 8 and 12, 2023. Piervil stated she was fired on May 15, 2023, for not contacting an administrator directly and denied any prior warnings.

¶ 4    Alden disputed Piervil's claim, stating she was discharged for being absent without notice for five days. Alden provided an Employee Separation Notice and two disciplinary memos: one cited her five-day absence without notifying the administrator, and another formal warning described Piervil leaving early during a license survey on April 27, 2023, without notice. The warning noted prior issues and that managers are required to stay until surveyors leave. When surveyors requested documents from Piervil's area, she was unavailable. Piervil refused to sign the memo.

¶ 5    On May 26, 2023, Piervil told the Department of Employment Security that her husband Joseph went to work several times in early May but could not find the appropriate personnel, ultimately submitting a sick leave request. Upon returning on May 15, Piervil was terminated and denied receiving prior warnings, and she was told she should have called directly instead of the

general line. On June 6, the Department ruled Piervil eligible for benefits, citing unsubstantiated misconduct claims. Alden appealed, referencing documents affirming employees must notify their supervisor if unable to work. On June 27, the Department issued a reconsidered ruling, finding Piervil ineligible for benefits.

¶ 6    On July 3, 2023, Piervil appealed, claiming she was terminated due to retaliation and discrimination, with a related case pending before the Illinois Human Rights Commission. She reported calling off sick on May 8, 2023, followed by her husband notifying the office and submitting a doctor's note confirming treatment in the ER and clearing her to return to work if well enough by May 12. Upon returning May 15, Piervil was told she was fired for not directly informing her administrator, despite providing medical documentation and a sick pay request form.

¶ 7    On August 4, 2023, an administrative law judge (ALJ) conducted a telephone hearing in which Alden's business office manager Cherie Smith (Cherie) and administrator Latonia Smith (Latonia) testified. Piervil and Joseph also testified.

¶ 8    Cherie testified that Piervil was discharged for failure to call off. Pursuant to Alden policy, which Piervil received when she was hired, an employee who will miss work must "report [that] to her immediate supervisor." Piervil was previously warned about this policy. On April 27, 2023, Piervil left work early during a "survey." According to Cherie, although Piervil knew that managers must stay until the surveyor exited the facility, Piervil left an hour early without notification. Piervil's absence was discovered when a surveyor needed information and she was not present. Piervil received a warning but refused to sign it. Thereafter, she had five days of "no call, no show," and was discharged. If Piervil was not going to come to work, she should have contacted Latonia, her immediate supervisor.

¶ 9    Latonia testified that before April 27, 2023, Piervil had left the facility without notice or authorization, and when confronted, offered "no response that was acceptable." Regarding the April 27 incident, Latonia learned Piervil was not in the building; she returned "sometime later" and stated she was tired and had "walked out," despite knowing surveyors were present for the facility's annual licensing survey. Piervil had previously received verbal counseling for leaving early without notice during a public-health survey.

¶ 10    Latonia further testified that employees must call off each day they miss work, but the facility did not hear from Piervil for a week. In extreme circumstances a relative may call on an employee's behalf, but Latonia was not told Piervil was unable to communicate and attempts to reach her were unsuccessful. The weeklong absence caused a coverage "avalanche effect" with a "negative effect" on patients.

¶ 11    When Piervil returned on May 15, 2023, she again had no explanation for failing to call or answer the phone, stating only that she left a note in the business office manager's box. She also offered no reason for her weeklong absence. When told she was being discharged, she produced a doctor's note that did not indicate she was unable to call.

¶ 12    Latonia testified that when Joseph later came to the facility, he did not show identification and was "very belligerent and verbal." He demanded "papers," but Latonia told him she could not release employee-file documents. When he began yelling, she warned that police would be contacted if he did not leave. Latonia denied that Joseph provided any note or information about Piervil's status.

¶ 13    Piervil testified that Latonia told her she was fired for failing to notify anyone on Monday, Tuesday, and Wednesday, but Piervil claimed she was discharged in retaliation and due to

discrimination. She denied receiving Alden's policies and procedures at hire, stating that the HR office gave her a paper to sign and "kept everything." She testified she was never told about the call-off procedure and used a number posted on a wall to "call off sick." She denied receiving prior warnings, denied leaving early without permission, and denied that any surveyor was present on April 27, 2023. She further denied leaving early that day, asserting instead that she completed her 6 a.m. to 2 p.m. shift, left, and returned at 3:20 p.m. to go to Latonia's office, and then left again at 3:20 p.m. She denied refusing to sign the May 5, 2023 warning.

¶ 14    Piervil testified that at 5:30 a.m. on May 8, 2023, she called the number on the wall and told the person who answered that she was sick. She did not call Latonia because she had never called her before. On May 9, she was "too sick," so Joseph called. She denied calling the "wound doctor," stating instead that she texted him at 1:00 a.m. on Wednesday from the hospital to say she was sick. She did not text Latonia because she believed she had already called off. She stayed at the hospital the night of May 9.

¶ 15    When the ALJ asked why she could not call on May 10, Piervil responded that Joseph brought the doctor's note to the office, and on May 11 he brought the sick-pay request form. She denied knowing that her employer could not give information to unknown individuals but stated that Joseph received the form.

¶ 16    Joseph stated that Piervil called the employer on May 8, 2023. On May 9, she was very ill, so Joseph contacted and visited the facility on Monday, Tuesday, and Wednesday. On Monday, he identified himself as her husband but was told the person handling sick forms was unavailable. He returned on Tuesday, then on Wednesday provided a doctor's note and spoke with the administrator, denying he raised his voice.

¶ 17 The ALJ asked if Latonia had notice of Piervil calling the attendance line between May 8 and May 12, 2023; she said no and received no texts from Piervil that week. When asked about Piervil signing off on Alden's policies, Latonia replied the acknowledgment was dated August 19, 2022. She also stated that Piervil's claim about no surveyor being present on April 27, 2023, was false, as Piervil left before her shift ended and before the surveyor exited the building.

¶ 18 On August 15, 2024, the ALJ found that Piervil received written and verbal notice of Alden's attendance policy, which required her to contact the facility administrator if she would miss work. She had previously received a verbal warning and reeducation after leaving before a survey was complete. On April 27, 2023, she again left early during a survey without notice or permission and received a written warning. From May 8 to May 12, 2023, she did not report to work or contact Alden and attempts to reach her were unsuccessful. Although Piervil claimed she and her husband called an attendance call-off line on May 8 and 9, the employer denied receiving those calls, and Piervil did not call her supervisor. The ALJ found that Piervil received verbal and written warnings but "refused" to follow Alden's procedures, left early without notice on April 27, and failed to follow call-off procedures during the week of May 8. The ALJ also found that Alden's policy was violated when her husband called for her. The ALJ deemed Piervil's testimony "evasive and contradictory," noting her denial of basic policies and her failure to reasonably explain why she did not follow the call-off procedure. Based on a preponderance of the evidence, the ALJ concluded that Alden met its burden to show that Piervil willfully and deliberately violated its policies despite prior warnings, rendering her ineligible for benefits due to misconduct.

¶ 19 Piervil appealed to the Board, and on January 2, 2024, the Board held she was ineligible for benefits. The Board found that Piervil was aware of Alden's written attendance policy requiring

employees to notify their supervisor if they could not report for work. It further found that she left early on April 27, 2023, without notifying a supervisor and received a written warning on May 5, 2023. Thereafter, she failed to report her absences between May 8 and May 12, 2023, in accordance with Alden's policy. She was discharged on May 15, 2023, based on the "no call/no show" during that week.

¶ 20    The Board noted that an individual is ineligible for benefits if discharged for misconduct connected with work, and that misconduct includes the knowing, repeated violation of an employer's lawful attendance policies following a written warning.

¶ 21    The Board concluded that Piervil had received a prior written warning regarding attendance. Although the evidence supported a finding that her medical condition prevented her from working between May 8 and May 11, 2023, the Board found she failed to present credible testimony or documentation showing that the condition prevented her from reporting on May 12. The Board determined that she did not make reasonable efforts to remedy the reasons for her violation of the attendance policy or show that the violations were outside her control.

¶ 22    The Board found Latonia's testimony credible that Piervil was a "no call/no show" for the week of May 8, 2023, and that Piervil's hearing testimony contradicted her statements to a claims adjudicator regarding how her absences were reported. The Board therefore found her testimony about contacting Alden not credible. Concluding that Piervil failed to rebut Latonia's credible testimony, the Board held that she was a "no call/no show" from May 8 through May 12, 2023, and that the evidence established misconduct under section 602(A)(3) of the Act. The Board further found that her actions constituted a deliberate and willful violation of Alden's policy that

harmed the employer, and that she was discharged for misconduct connected with work under section 602(A). She was therefore ineligible for benefits.

¶ 23 Piervil filed an administrative review complaint in circuit court. The court affirmed the Board's final decision and Piervil now appeals. On appeal, she contends that the circuit court "sided" with a vague and "forged" allegation that she was a " 'no call no show' " and "ignored" her facts. She argues that although her actions were "labeled" misconduct, they cannot be construed as deliberate and willful because she presented "medical evidence." We disagree.

¶ 24 An employee who was discharged for "misconduct" as defined in section 602(A) of the Act is ineligible to receive unemployment insurance benefits. *Alternative Staffing, Inc. v. Illinois Department of Employment Security*, 2012 IL App (1st) 113332, ¶ 30; 820 ILCS 405/602(A) (West 2022). A discharged employee has the burden to establish her "initial eligibility" for benefits. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 28 (citing 820 ILCS 405/500 (West 2012). However, "an employer who asserts an employee's disqualification for benefits based on misconduct has the burden of proving such misconduct." *Id.*

¶ 25 When reviewing an appeal from a decision in which benefits were denied, we review the decision of the Board. *Id.* ¶ 22. Our standard of review depends on the type of question presented. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05 (1998). Here, because our review concerns mixed questions of law and fact, we must determine whether the agency's decision was clearly erroneous. *Petrovic*, 2016 IL 118562, ¶ 21. It was not.

¶ 26 Piervil reported to the Department that Joseph visited the facility daily from May 8 to 11, 2023, and said employees should call their supervisor directly about absences. At the hearing, Piervil stated she called the number on May 8, Joseph called on May 9 due to her illness, and she

never contacted Latonia as she had not done so previously. Piervil denied receiving Alden's attendance policy, prior warnings, or leaving early without permission. However, Cherie and Latonia testified that Piervil received the attendance policy, was warned after leaving early on April 27, 2023, and did not report her absences between May 8 and 12, 2023.

¶ 27    The record includes a May 5, 2023 disciplinary memo titled "Formal warning," stating that on April 27, 2023, Piervil left early during an annual license survey without notifying admin, despite prior warnings about similar violations. It also contains an "EMPLOYEE HANDBOOK ACKNOWLEDGEMENT" signed by Piervil on August 19, 2022, and Alden's attendance policy requiring employees to notify their immediate supervisor if unable to report to work.

¶ 28    Our review confirms the Board's factual findings: (1) Piervil knew Alden's attendance policy requiring an employee to notify her supervisor if she was unable to report for work; (2) Piervil received a written warning after leaving work without notice on April 27, 2023; and (3) Piervil did not report absences from work between May 8 and 12, 2023, as required by Alden's attendance policy. These findings are not against the manifest weight of the evidence. Nor is the Board's determination that Piervil's violations of Alden's attendance policy qualifies as misconduct under section 602(A)(3) of the Act, making her ineligible for benefits.

¶ 29    Pursuant to section 602(A) of the Act, a terminated employee is disqualified from receiving benefits under specified conditions where she "has been discharged for misconduct connected with *** work." 820 ILCS 405/602(A) (West 2022). Section 602(A) defines " 'misconduct' " as

"the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation

has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." *Id*.

¶ 30   Additionally, under section 602(A)(3) " 'misconduct' " includes

"[k]nowing, repeated violation of the attendance policies of the employer *** following a written warning for an attendance violation, unless the individual can demonstrate that he or she has made a reasonable effort to remedy the reason or reasons for the violations or that the reason or reasons for the violations were out of the individual's control. Attendance policies of the employer shall be reasonable and provided to the individual in writing, electronically, or via posting in the workplace." 820 ILCS 405/602(A)(3) (West 2022).

¶ 31   Having reviewed the Board's final order and the record, we conclude that the Board's finding of "misconduct" under section 602(A)(3) is not clearly erroneous. Under section 602(A)(3), misconduct includes the repeated violation of an employer's attendance policies, consistent with state and federal law, following a written warning. The record contains the May 5, 2023 formal warning issued after Piervil left the facility early without notice on April 27, 2023, during a survey. It also contains Alden's attendance policy, requiring an employee to contact her supervisor if she cannot report to work, and Piervil's signed acknowledgment of that policy. Latonia testified that Piervil did not contact her between May 8 and May 12, 2023, that attempts to reach Piervil were unsuccessful, and that her absences created coverage issues. On this record, we cannot say the Board erred in determining that Piervil was discharged for misconduct connected with work, namely repeated violations of Alden's attendance policy.

¶ 32   Piervil, on the other hand, claims that her "facts" were disregarded while the employer's "lies and forged evidence" were accepted. However, an appellate court cannot re-evaluate the

evidence, resolve conflicting testimony, or assess witness credibility. See *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16. In this case, the Board determined Piervil's testimony was not credible, and we will not replace the Board's judgment with our own regarding this matter. See *520 South Michigan Avenue Associates v. Department of Employment Security*, 404 Ill. App. 3d 304, 317 (2010).

¶ 33 Piervil claims her absence was not intentional or malicious, so it should not be deemed willful. However, evidence shows she knew Alden required employees to notify a supervisor if unable to work but did not contact Latonia between May 8 and May 12, 2023. She did inform a wound care doctor on May 10. "Willful misconduct occurs where an employee is aware of a company rule and consciously disregards it." *Ken's Beverage, Inc. v. Wood*, 2021 IL App (3d) 190115, ¶ 14.

¶ 34 Piervil next contends she was denied due process because she was not "served with the notice of appeal" or the "appeal documents," and because the "trial court" did not give attention to her request for an opportunity to present evidence to rebut Alden's "false allegations." She cannot, however, establish prejudice. The Department's reconsidered determination—finding her ineligible for benefits based on a "no call/no show"—informed her of the issues she needed to address on appeal. See *Mohorn-Mintah v. Board of Education of City of Chicago*, 2019 IL App (1st) 182011, ¶ 31 (a due process violation requires prejudice).

¶ 35 Here, Piervil was notified of the Department's reasoning, disputed that conclusion and Alden's evidence in her written appeal, and had the opportunity to be heard at a hearing where she could cross-examine Alden's witnesses and present her own witness. See *id.* (due process requires notice and a meaningful opportunity to be heard). Although she asserts the trial court did not permit

additional evidence, judicial review of an administrative decision is confined to the administrative record. See *Scatchell v. Board of Fire & Police Commissioners for Village of Melrose Park,* 2022 IL App (1st) 201361, ¶ 35; 735 ILCS 5/3-110 (West 2022) ("No new or additional evidence *** shall be heard by the court.").

¶ 36     Our review shows the Board's decision, finding that Piervil intentionally violated Alden's attendance policy, is not clearly erroneous. Therefore, we uphold the decision denying Piervil unemployment insurance benefits.

¶ 37     Affirmed.