# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Alternative Staffing, Inc. v. Illinois Department of Employment Security*,
**2012 IL App (1st) 113332**

| | |
|---|---|
| Appellate Court Caption | ALTERNATIVE STAFFING, INC., Plaintiff-Appellant, v. ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY, an Administrative Agency of the State of Illinois; JAY ROWELL, Director of Employment Security; and ELIZABETH ARMSTRONG, Claimant, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-11-3332 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | December 3, 2012<br><br>December 18, 2012<br>December 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Board of Review's award of unemployment benefits to claimant based on its finding that she was not discharged for deliberately and willfully violating plaintiff's procedures was reversed as clearly erroneous in view of claimant's history of warnings about her tardiness and poor work performance. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-050643; the Hon. Margaret A. Brennan, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal

Wessels Sherman, of Chicago (Sean F. Drake, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Valerie Quinn, Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Alternative Staffing, Inc. (Alternative Staffing), discharged its employee, defendant Elizabeth Armstrong (Armstrong), for misconduct, and Armstrong applied for unemployment insurance benefits. Armstrong's claim with the Illinois Department of Employment Security (IDES) was initially denied, but on appeal, the Board of Review ultimately found her eligible for unemployment benefits, and the circuit court of Cook County affirmed that decision. Alternative Staffing now challenges that ruling on appeal.

¶ 2    Alternative Staffing maintains that Armstrong engaged in misconduct where she repeatedly arrived late for work and performed poorly, and that the Board failed to look at the series of violations and instead focused on only one " 'final' or 'triggered' event" in determining that Armstrong did not willfully or deliberately violate its policy. Alternative Staffing further maintains that the Board failed to determine whether Armstrong's testimony at the telephone hearing was credible.

¶ 3    On January 11, 2010, Armstrong was hired by Alternative Staffing as its payroll administrator. On October 28, 2010, she was terminated for misconduct. She then sought, and was ultimately awarded, unemployment insurance benefits.

¶ 4    The record shows that on April 1, 2010, Armstrong received a memorandum from her manager, Julie Tracey (Manager Tracey), informing her that the swipe card issued to her was for the time clock system which would be effective April 5, 2010, that her start time on Monday was 8 a.m. until further notice, and that she was considered to be an hourly employee. In the memorandum, Manager Tracey further stated that it had become apparent that Armstrong was not content with her current assignment as payroll administrator, that her work performance had been less than what was anticipated when she was hired, and that she was being placed on probation. Armstrong was further admonished that if there was no immediate and dramatic turnaround in her performance within the next 30 working days, Alternative Staffing would have no other option but to terminate her employment. Armstrong wrote on the memorandum document that "[m]y discontentment is due to the fact that there is not enough work to be done in a 40 hour week." She signed and dated this statement April

-2-

2, 2010.

¶5 The record further shows that on May 24, 2010, Armstrong was given an employee warning notice detailing Armstrong's nine tardy/late infractions as follows:

April 26, 2010, scheduled for 8 a.m., arrived at 8:09 a.m.

April 27, 2010, scheduled for 7 a.m., arrived at 7:23 a.m.

May 3, 2010, scheduled for 8 a.m., arrived at 8:27 a.m.

May 4, 2010, scheduled for 7 a.m., arrived at 7:15 a.m.

May 10, 2010, scheduled for 8 a.m., arrived at 8:15 a.m.

May 11, 2010, scheduled for 7 a.m., arrived at 7:24 a.m.

May 17, 2010, scheduled for 8 a.m., arrived at 8:37 a.m.

May 18, 2010, scheduled for 7 a.m., arrived at 7:42 a.m.

May 24, 2010, scheduled for 8 a.m., arrived at 8:21 a.m.

Armstrong was warned that the "[n]ext occurrence will result in a 1 week suspension without pay," and Armstrong signed this notice on the date it was issued.

¶6 On July 20, 2010, Armstrong was issued another employee warning notice which she also signed. According to this notice, Armstrong was scheduled to arrive at work at 8 a.m. on July 19, 2010, but did not arrive until 8:50 a.m. It was also noted that Armstrong had called and informed Manager Tracey that she would be arriving late because she had overslept, and that Armstrong was advised that Alternative Staffing would suspend her for the next five Fridays. Armstrong was also notified that the next infraction would result in termination.

¶7 On September 15, 2010, Armstrong was issued another employee warning notice, which she signed. This notice was precipitated by a payroll error Armstrong made on September 10, 2010, which resulted in five employees receiving an incorrect payment amount. On September 15, 2010, Armstrong made another payroll error for a client which resulted in an incorrect pay amount for two employees. Armstrong was again advised that a further infraction would result in termination of employment. On this notice, Armstrong wrote that she "understood" that she should "slow down to get my work more accurate [*sic*]," and that she had been told previously to "speed up."

¶8 On October 14, 2010, Armstrong received an employee warning notice relating to her 33-minute tardiness on October 11, 2010. She was also advised that she had been repeatedly warned and reprimanded for excessive tardiness. On October 26, 2010, Armstrong was issued another employee warning notice, following her late arrival at 8:20 a.m., when she was scheduled to arrive at 8 a.m.

¶9 On October 28, 2010, Alternative Staffing issued a letter terminating Armstrong's employment based on her repeated tardiness and poor performance. Alternative Staffing noted that Armstrong had been late nine times in one month, and again on July 20, 2010, October 14, 2010,[1] and October 26, 2010. Alternative Staffing also provided that

---

[1]Based on the employee warning notice, this should be October 11, 2010.

-3-

Armstrong's employment was terminated for poor work performance as noted in the September 15, 2010, notice.

¶ 10 On October 31, 2010, Armstrong filed a claim for unemployment insurance benefits. In the interview conducted on her claim, Armstrong indicated, *inter alia*, that she was not aware that her job was in jeopardy and further indicated that she was having car problems during the time in question.

¶ 11 On November 10, 2010, Alternative Staffing sent the IDES a protest letter opposing the grant of unemployment benefits to Armstrong. Alternative Staffing alleged that over a period of nine months, "various issues started to surface giving us a great deal of concern." Alternative Staffing alleged that Armstrong made numerous late night telephone calls to the president of the company, Steven Swerdloff (Swerdloff), and employees Manager Tracey and Yolanda Sappington, during which she appeared to be under the influence. Alternative Staffing also alleged that Armstrong was given a warning letter outlining concerns over Armstrong's work performance, including "[a]ccuracy and overall discontent." In response to this letter, Armstrong stated that she was bored. Alternative Staffing further noted in its protest letter that Armstrong had been late 12 times and that Armstrong made various payroll errors resulting in several employees being paid incorrectly twice in two weeks. Alternative Staffing asserted that she should be found ineligible for benefits based on her "continued *** disregard [of] prudent company policies."

¶ 12 On November 18, 2010, the IDES found Armstrong ineligible for unemployment benefits, based on her discharge for tardiness. The IDES noted that Armstrong was previously warned by Alternative Staffing and was aware of company policy, and she was discharged for misconduct under section 602(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2010)).

¶ 13 On December 15, 2010, Armstrong filed a request for reconsideration of the adjudicator's determination. She maintained that she was wrongfully terminated due to retaliation from her employer and that the last two dates of tardiness were "not under [her] control." Armstrong maintained that she was the only black employee at the company and that Alternative Staffing was trying to make her quit.

¶ 14 Armstrong further alleged that when she was switched to hourly employee status, she was not "formally told the procedures that hourly employees were not allowed [to punch] in early," and she later discovered that her "punches were being highly scrutinized." She maintained that on May 10 and 11, 2010, she was paid incorrectly due to the fact that Manager Tracey changed her password to access the software program, thereby preventing her from doing her job. On May 17 and 18, 2010, she had called Manager Tracey informing her she would be late and to note that she had worked until 7:44 p.m. the previous night. She maintained that on July 19, 2010, she overslept because she had taken a sleeping pill. Armstrong also alleged that her work errors were due to Manager Tracey setting up employees with the wrong social security numbers and rates.

¶ 15 Armstrong further claimed that on October 11, 2010, her car engine stopped on the expressway, and when it was finally restarted, she continued on to work. She claimed that on October 26, 2010, her son had the car and was called into a mandatory work meeting and

that she had notified her manager. When she finally had possession of the car, the Stevenson expressway was closed due to "extremely high rain," winds of 61 miles per hour, and threats of a tornado. She maintained that the last two tardy dates "were completely[ ] out of [her] control."

¶ 16    In support of her appeal, Armstrong attached, *inter alia*, invoice notices from her auto repair shop which were dated October 13 and November 2, 2010. The invoices provided that the car "dies" sometimes. Armstrong also included a copy of a medical return-to-work note from her doctor, which indicated that she was under his care on September 13, 2010, and that she could return to work the next day.

¶ 17    On December 17, 2010, the claims adjudicator issued a reconsidered determination, finding that Armstrong was eligible for benefits from October 31, 2010. The adjudicator noted that Armstrong had provided a medical statement and auto repair bill for the days she called in absent, and because the action that resulted in her discharge was not deliberate or willful, she was eligible for benefits.

¶ 18    On December 20, 2010, Alternative Staffing filed an appeal and requested a telephone hearing. On January 5, 2011, Alternative Staffing's attorney filed an appearance and documented Armstrong's tardiness from May 24 through October 26, 2010, noting a total of 12 late arrivals and also 2 warnings regarding her poor work performance, which included the incorrect entry of employees' salaries. Alternative Staffing maintained that this documentation clearly indicated that Armstrong willfully and deliberately continued to violate its reasonable policies. Alternative Staffing noted that it had only asked that Armstrong come to work on time, and had provided her with numerous warnings and opportunities to correct her behavior, but that she decided not to heed those warnings or instructions.

¶ 19    On January 11, 2011, the telephonic hearing was held. Swerdloff, the president and owner of Alternative Staffing, testified that he hired Armstrong as the payroll administrator and her duties included entering the hours of Alternative Staffing's employees onto time cards, auditing those records, making sure the checks were issued and balanced appropriately, and making sure that all employees were paid properly. Swerdloff further stated that he believed Armstrong had a drinking problem as she would come in "foggy" or "not all there." She then started having tardiness problems, particularly on Monday or Tuesday, which became a large problem for them in getting checks issued on time. Armstrong's tardiness was first discussed with her on May 24, 2010, after she had been late nine times. The next time she was late was July 19, 2010. On that day, she called Manager Tracey to let her know she had overslept and arrived about an hour late. Based on that tardiness, Alternative Staffing suspended Armstrong for a week without pay, but allowed her to take five Fridays in a row off, rather than suspend her for one consecutive week, to limit the financial hardship to her. Swerdloff further testified that he terminated Armstrong due to "excessive tardiness and poor job performance," noting that Armstrong was originally hired as an hourly employee.

¶ 20    Armstrong testified that she was originally hired as an "exempt" employee with no attendance policy, but she acknowledged that Swerdloff informed her that there were no

vacation days, bereavement days, paid time off, or severance or sick pay. Armstrong further testified that she was aware that if she was not on time, she could be suspended or discharged. She explained that her start time fluctuated, that the schedule was posted on Saturdays, and that on the last week of work, which included October 28, 2010, she was to report to work at 8 a.m. on Monday and Tuesday. The schedule was given to her verbally. Armstrong explained that she was late to work during the last week of her employment because her son had possession of her car and there was a tornado. She acknowledged that she was tardy nine times as noted by Alternative Staffing. In summary, Armstrong stated that she did not willfully or deliberately try to be late, and that it was her employer's intent to terminate her from the time she had explained to him that there was not enough work to do in a 40-hour week.

¶ 21        On January 12, 2011, the referee issued a decision finding that Armstrong was ineligible for benefits. In reaching its decision, the referee noted that Armstrong was hired as an "exempt" employee and was later adjusted to an hourly employee status based on her numerous attendance infractions and was discharged for excessive tardiness. The referee found that Armstrong had been warned and had been late more than a dozen times, that she was aware of her start time, but continued to be late, and did not remedy her attendance problems even though she was aware that her job was in jeopardy. The referee noted that an employer has the right to expect its employees to report to work on time, unless prevented from doing so for some compelling reason, that Armstrong's actions were within her control, and that her misconduct was deliberate and willful. Based on the preponderance of the evidence, the referee found that Armstrong's actions amounted to misconduct under section 602(A) of the Act and that she was disqualified from receiving unemployment benefits.

¶ 22        On January 21, 2011, Armstrong appealed the referee's decision. She maintained that the referee erred in finding that her tardiness was misconduct and that she was denied a fair hearing. Although Armstrong filed a brief in support of her appeal, this brief was not considered by the Board of Review (Board) because it was not certified in writing to have been mailed to or served upon Alternative Staffing as required.

¶ 23        On May 3, 2011, the Board set aside the referee's decision and found Armstrong eligible for benefits. The Board determined that Armstrong was last late to work prior to her discharge on October 26, 2010, due to extremely poor weather conditions and the circumstance of her son having possession of her car, and concluded:

"The employer has not established by a preponderance of the evidence that the claimant when [she] arrived late to work on October 26, 2010 was willfully and deliberately violating [plaintiff's] policies and procedures."

¶ 24        On June 7, 2011, Alternative Staffing filed a timely complaint for administrative review in the circuit court of Cook County, alleging that the Board's decision was contrary to the law and against the manifest weight of the evidence. Alternative Staffing maintained that the Board ignored documents introduced into evidence, as well as testimony taken at the hearing, in arriving at its erroneous conclusion that Armstrong was not discharged for misconduct under section 602(A) of the Act.

¶ 25        On August 31, 2011, Alternative Staff filed a brief alleging that, in setting aside the

referee's January 12, 2011 decision, the Board focused solely on the last absence, as a "triggering event," instead of the series of absences leading up to her termination as well as her poor work performance. Alternative Staffing maintained that section 602(A) of the Act does not contemplate one final or triggered event to determine if an individual willfully and deliberately violated a company policy, but instead violation of this section may result from " 'cumulative rules violations taken as a whole, because the definition of misconduct includes repeated rules violations following a warning.' " It further alleged that the Board's determination was clearly erroneous based on its failure to include the series of events that led to Armstrong's employment termination, the evidence of her payroll errors, credibility and reliability of the witnesses, and that the Board erroneously relied on one triggering event in reaching its decision that Armstrong was not terminated for misconduct.

¶ 26    The circuit court affirmed the Board's decision, finding that the decision was not against the manifest weight of the evidence, contrary to law, or clearly erroneous. This appeal followed.

¶ 27    In this court, Alternative Staffing contends that the Board's decision was clearly erroneous in that it only relied on one "triggering" event, namely, Armstrong's tardiness on October 26, 2010, to conclude that Armstrong did not engage in misconduct and was therefore entitled to unemployment benefits. Alternative Staffing maintains that the Board's decision failed to take into account the repeated and cumulative actions that Alternative Staffing relied on in making its decision to terminate Armstrong's employment. This included Armstrong's tardiness on 12 occasions and her disregard of Alternative Staffing's instructions to be more careful in making payroll entries.

¶ 28    IDES initially takes issue with Alternative Staffing's brief, claiming that it is not in compliance with Illinois Supreme Court Rule 341 (eff. July 1, 2008) in that it has no statement of facts, fails to pinpoint citations for cases it cites, and makes statements unsupported by factual or legal citations. We allowed Alternative Staffing to rectify any deficiency by filing a supplemental brief, which complies with Rule 341.

¶ 29    As to the substantive matter, our review of the administrative proceeding is limited to the propriety of the Board's decision. *Odie v. Department of Employment Security*, 377 Ill. App. 3d 710, 713 (2007). Whether an employee was discharged for misconduct is a mixed question of fact and law and is analyzed under the clearly erroneous standard of review. *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 327 (2009). A decision is clearly erroneous if the record leaves the reviewing court with the firm and definite conviction that a mistake has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

¶ 30    An employee who is discharged for misconduct is ineligible for unemployment insurance benefits. 820 ILCS 405/602(A) (West 2010). Misconduct can be premised on either a particular incident of a violation of an employer's rules that triggered the employee's discharge, or the employee's cumulative violations of the employer's rules taken as a whole. *Katten Muchin & Zavis v. Department of Employment Security*, 279 Ill. App. 3d 794, 800 (1996). Alternative Staffing maintains that the Board failed to look at the series or cumulative events that led to her termination, failed to review all the "rules" that Alternative

Staffing had relied on in terminating Armstrong, and failed to properly apply section 602(A) of the Act in determining if there was misconduct.

¶ 31    We observe that section 602(A) of the Act defines misconduct as a deliberate and willful violation of an employer's reasonable rule or policy, provided that the violation has harmed the employer or other employees or *has been repeated despite a warning* or other explicit instruction from the employer. 820 ILCS 405/602(A) (West 2010). Willful misconduct occurs where an employee is aware of a company rule and consciously disregards it. *Odie*, 377 Ill. App. 3d at 713. Harm includes damage or injury to other employees' well-being or morale or to the employer's operations or goodwill, and tardiness harms an employer because it disrupts the general operations of the business. *Woods v. Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 21 (citing 56 Ill. Adm. Code 2840.25(b) (2012)).

¶ 32    Here, the record shows that Alternative Staffing presented evidence of a reasonable policy regarding timely attendance by its employees (*Woods*, 2012 IL App (1st) 101639, ¶ 20), Armstrong admitted that she was aware of this policy, and on April 2, 2010, she signed a memorandum detailing the fact that she had a swipe card for the time clock system and that she was required to arrive by a certain time. Nonetheless, from April 26 through May 24, 2010, Armstrong was tardy *nine* times and received a warning that if the tardiness continued she would receive a one-week suspension without pay. She was tardy again on July 19, 2010, because she overslept, and received a second warning that if she was tardy again she would be terminated. Notwithstanding the warning, she arrived late on October 11, 2010, due to car problems, and received another warning. Again, two weeks later, on October 26, 2010, she was 20 minutes late for work and explained that her son had possession of her car and that by the time he returned home with the car the expressway was closed due to severe weather.

¶ 33    Thus, although Armstrong was well aware of her previous infractions and attendant warnings, and knew that her job was in jeopardy, she repeatedly arrived late for work. The record reflects that Armstrong knew that her car was not reliable, and that her son had possession of her car on October 26, 2010, but deliberately chose to wait on that date, rather than seek a different mode of transportation to get to work on time. See *Odie*, 377 Ill. App. 3d at 714-15. These cumulative incidents demonstrate a complete and conscious disregard of Alternative Staffing's reasonable work policy which required employees to be on time. Under the Act, this constitutes willful misconduct. *Woods*, 2012 IL App (1st) 101639, ¶ 20; 820 ILCS 405/602(A) (West 2010).

¶ 34    The Board, however, focused on a single "triggering" incident of tardiness where some extenuating circumstances existed, but failed to make any reference to the 11 previous incidents of tardiness and rules violations set forth by Alternative Staffing, which cumulatively fell within the scope of misconduct under section 602(A) of the Act. *Katten Muchin & Zavis*, 279 Ill. App. 3d at 799. We hold, after review, that the evidence does not support the Board's determination. *Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund*, 293 Ill. App. 3d 1070, 1076 (1997).

¶ 35    Although poor performance and carelessness standing alone would not make her ineligible for unemployment benefits (*Messer & Stilp, Ltd. v. Department of Employment Security*, 392 Ill. App. 3d 849, 862 (2009)), it is evident that Armstrong's actions harmed

Alternative Staffing and that her repeated tardiness constituted misconduct in connection with her work under the Act (*Woods*, 2012 IL App (1st) 101639, ¶ 21).

¶ 36     Alternative Staffing further contends that the Board failed to document which witnesses it found to be credible. The Board, however, is not required to make such a finding. 820 ILCS 405/803 (West 2010). In any event, given our holding, this issue is moot. *Sloan v. O'Dell*, 159 Ill. App. 3d 268, 274 (1987).

¶ 37     In sum, where the evidence shows that Armstrong was given *five warnings and* a memorandum regarding her tardiness or poor work performance, the chronic nature of the infractions, and the harm caused to Alternative Staffing and its employees, we hold that the Board's decision that Armstrong did not deliberately and willfully violate the employer's policies and procedures is clearly erroneous. *Woods*, 2012 IL App (1st) 101639, ¶ 21; *Odie,* 377 Ill. App. 3d at 714-15; 820 ILCS 405/602(A) (West 2010). We, therefore, reverse the Board's decision awarding Armstrong unemployment benefits.

¶ 38     Reversed.