2021 IL App (3d) 190115

Opinion filed February 19, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| KEN'S BEVERAGE, INC., | ) | Appeal from the Circuit Court |
| | ) | of the Twelfth Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE P. WOOD, ILLINOIS | ) | |
| DEPARTMENT OF EMPLOYMENT | ) | Appeal No. 3-19-0115 |
| SECURITY BOARD OF REVIEW, and | ) | Circuit No. 18-MR-2455 |
| JEFF MAYS, in His Official Capacity as | ) | |
| DIRECTOR OF THE ILLINOIS | ) | |
| DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY, | ) | The Honorable |
| | ) | John C. Anderson, |
| Defendants-Appellees. | ) | Judge, presiding. |
| | ) | |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Justice Holdridge specially concurred, with opinion.

_____

**OPINION**

¶ 1     Plaintiff Ken's Beverage, Inc. discharged Michelle P. Wood from her position as a

dispatch supervisor, citing her behavior toward the manager and her subordinates during the final

months of her employment as the reason for the discharge. Wood applied for unemployment

benefits from the Illinois Department of Employment Security; Ken's Beverage resisted. Referee

David Ott held that Wood's discharge was for misconduct and that she was, therefore, not entitled to receive unemployment compensation benefits. The review board reversed Referee Ott's decision on the basis that Ken's Beverage had failed to meet its burden of showing that Wood had been discharged for misconduct. The circuit court affirmed the review board's decision. Ken's Beverage now appeals.

¶ 2                                     I. BACKGROUND

¶ 3        Michelle Wood was employed at Ken's Beverage from July 30, 2007, to March 1, 2018. Her final position at Ken's Beverage was as a Dispatch Supervisor. Ken's Beverage alleged that she had received at least 12 documented warnings within the seven years from June 2010 to July 2017, of which the following 6 were for unprofessional behavior. On June 10, 2010, Wood was given an oral warning for insubordination after she "blew up at a supervisor." She received a written warning for disruptive work behavior on February 15, 2011. The warning reported that Wood was bad-mouthing an employee while the employee was within hearing distances and counseled her to change her behavior. On April 1, 2011, she was placed on a three-day suspension for insubordination. Ken's Beverage alleged that Wood disrespected the owner while he was discussing her processing of invoices for payment. Wood was counseled to listen to instructions. On April 21, 2013, Wood received an oral warning for verbally insulting a coworker. Then, on April 25, 2013, she received a written warning for causing disruptive work behavior by cursing and swearing at another coworker.

¶ 4        On July 5, 2017, Wood received a "final" written warning alleging unprofessional conduct for making an inappropriate comment about an employee's sexual orientation. The conduct, which occurred in the presence of a manager, was deemed a violation of Ken's Beverage's sexual harassment policy. The written warning included a reprimand and stated that

"any further incidents of misconduct [or] harassment will result in [Wood's] immediate termination."

¶ 5    On March 1, 2018, Ken's Beverage terminated Wood for engaging in hostile and disruptive work behavior. Wood received an "employee counseling form," describing her conduct after the issuance of the final warning. It stated that Wood "demonstrated a continued pattern of abusive, petty and passive aggressive behavior [against] her supervisors" and three dispatchers under her supervision. It also stated that she "blatantly ignored requests from the Operations Manager." It concluded Wood's repeated behavior created a hostile work environment.

¶ 6    Wood subsequently filed a claim for unemployment security benefits, which Ken's Beverage resisted. On April 19, 2018, Referee Ott held a telephonic hearing to resolve her claim. Human Resources Director Pamela Rebhorn and Operation's Manager Carlos Mullins testified on behalf of Ken's Beverage. Rebhorn explained that, because of Wood's behavior, Ken's Beverage had to move personnel who felt uncomfortable because of her behavior. She stated that she received several complaints in the final months leading to Wood's termination.

¶ 7    Mullins testified that he was Wood's direct supervisor. A dispatcher, whom Wood supervised and who complained of daily disrespect and mistreatment from Wood, had to be transferred to another call center. He also stated that he found another dispatcher crying in her car because of a hostile interaction with Wood. Mullins recalled these incidents as occurring in February 2018, shortly before Wood was discharged. Finally, Mullins testified that, when he was discussing her behavior with her, Wood said "that's bulls***."

¶ 8    Referee Ott found that Wood had been counseled repeatedly regarding her behavior. He also found that Wood's comment ("that's bulls***") to Mullins was a willful and deliberate

disregard of the standards at Ken's Beverage. He concluded that the comment was not an isolated incident, as shown by the repeated prior occasions when she was counseled that her behavior had to stop. Referee Ott ruled that the "evidence showed that the employer fired [Wood] for misconduct within the meaning of the Section 602A." Wood appealed Referee Ott's ruling to the Department of Employment Security Board of Review.

¶ 9    The board reversed the ruling, concluding that the evidence was insufficient. It explained that Ken's Beverage's "case would have been greatly strengthened if any of the dispatchers [Wood] supervised, who allegedly complained about her behavior towards them, testified at the hearing and gave examples of [her] abusive qualities and liberal use of profanity while on the job ***." The board also stated that "Mullins could have written [Wood] up any number of times for her alleged insolence and insubordinate behavior ***." It noted that the comments made against the previous employee's sexual orientation were "ant-gay [*sic*]." But, the board found that, although Referee Ott could have properly considered the sexual allegation claim in the final notice, "it was a singular, isolated incident and not *** illustrative of [the] 'continued pattern' of abusive [behavior]" and "poor work performance for which she was ultimately discharged." The board concluded that Ken's Beverage failed "to provide eye-witness testimony about actual incidents, along with the dates of those incidents, and the contemporaneous documentary evidence."

¶ 10    Ken's Beverage filed a complaint for administrative review in the Will County circuit court on September 5, 2018. The court held a hearing on February 8, 2019. It considered the memoranda of law submitted by the parties; no testimony was heard. On February 15, 2019, the court affirmed the board of review, finding that the decision was neither contrary to the manifest weight of the evidence nor clearly erroneous. Ken's Beverage appealed.

4

¶ 11                                    II. ANALYSIS

¶ 12          On appeal, Ken's Beverage argues that the board of review's finding that Wood was not

terminated for misconduct was clearly erroneous. The company contends that the board

incorrectly focused on the final triggering event, rather than considering Wood's entire history of

misconduct, as evidenced by the numerous previous warnings she had received. Ken's Beverage

also contends that the board incorrectly applied a new legal standard by requiring the employer

to present additional eye-witness testimony to support the allegations of misbehavior following

the final warning. We agree with Ken's Beverage, and we reverse the board's decision and

reinstate Referee Ott's initial ruling.

¶ 13          When an appeal of an administrative agency's final decision comes to this court, we

review the decision of the agency—here, the board of review—rather than that of the circuit

court. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22. The court will not

disturb the agency's factual findings unless they are against the manifest weight of the evidence.

*Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 16. If,

however, the agency applies a legal standard to a given set of facts, whether its decision was

proper is reviewed under the clearly erroneous standard. *Cinkus v. Village of Stickney Municipal

Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). A decision is clearly erroneous if the

record leaves the reviewing court with the firm and definite conviction that a mistake has been

made. *Alternative Staffing, Inc. v. Illinois Department of Employment Security*, 2012 IL App

(1st) 113332, ¶ 29.

¶ 14          An employee who is discharged for misconduct is ineligible for unemployment insurance

benefits. 820 ILCS 405/602(A) (West 2018). To establish misconduct under section 602(A), the

employer must show that:

"(1) there was a deliberate and willful violation of a rule or policy of the employing unit, (2) the rule or policy was reasonable, and (3) the violation either harmed the employer or was repeated by the employee despite a previous warning or other explicit instruction from the employing unit." *Woods*, 2012 IL App (1st) 101639, ¶ 19 (citing 820 ILCS 405/602(A) (West 2008)).

"Harm includes damage or injury to other employees' well-being or morale ***." *Alternative Staffing, Inc.*, 2012 IL App (1st) 113332, ¶ 31. Misconduct can be premised on either a single incident of a violation of an employer's rules that triggered the employee's discharge or the employee's cumulative violations of the employer's rules taken as a whole. *Id.* ¶ 30. Willful misconduct occurs where an employee is aware of a company rule and consciously disregards it. *Id.* ¶ 31.

¶ 15 The record on appeal establishes each of the necessary elements for a section 602A employment misconduct. The parties do not dispute that Ken's Beverage had a policy against sexual harassment or that the policy was reasonable. The sole issue presented is whether Wood willfully violated the policy, despite repeated warnings from June 2010 to July 2017 for insubordination and disruptive work behavior. Eventually, Ken's Beverage issued her a final notice that her behavior would no longer be tolerated. The "final" notice came as a warning triggered by a comment about a fellow employee's sexual orientation, which was made in the presence of a manager. The notice informed Wood that "any further incidents of misconduct [or] harassment will result in [her] immediate termination."

¶ 16 Despite these warnings and the final notice she received, Wood persisted in her abusive, offensive behavior and insubordination. Two dispatchers, supervised by Wood, complained to Mullins of behavior following Wood's receipt of the final notice. One dispatcher reported daily

6

disrespect and mistreatment from Wood, and another dispatcher was found crying in her car because of an interaction with Wood. Rebhorn explained that, because of Wood's behavior, Ken's Beverage found it necessary to transfer dispatchers who were uncomfortable because of her behavior. Moreover, when Mullins attempted to discuss her behavior with her, Wood dismissed the claims as "bulls***." Referee Ott concluded that Wood's behavior and her comment to Mullins were consistent with previous behavior for which she had been repeatedly warned over the course of her employment.

¶ 17    However, the Board of Review disagreed, concluding that the sexual harassment claims were different from the abusive behavior for which she was discharged. The board seemingly considered the comments regarding an employee's sexual orientation to be of a higher magnitude than the ordinary type of abusive language for which Wood was ultimately discharged. The board therefore held that Ken's Beverage failed to give Wood further requisite notice before terminating her. We do not find the board's distinction regarding the nature of Wood's various choice of abusive language consistent with the statute. Whether verbal insult targeted at an employee constitutes disruptive or abusive behavior does not turn on whether the insult was anti-gay, was predicated on the employee's sex or gender, or contained ordinary use of profane language. The issue is whether Wood's comments or choice of words caused harm to other employees by affecting their "well-being" or their "morale." *Alternative Staffing, Inc.*, 2012 IL App (1st) 113332, ¶ 31 ("Harm includes damage or injury to other employees' well-being or morale ***."). Abusive language is harmful regardless of the subject of its content. *Id.*

¶ 18    On July 5, 2017, Wood received a final notice for abusive behavior against a dispatcher under her supervision. The employee counseling form noted that the warning was triggered under Ken's Beverage's sexual harassment policy. However, the warning alerted her to the risk

of termination for disruptive or abusive behavior against other employees. In *Alternative Staffing*, the appellate court found error where the board focused on the final triggering incidents, while ignoring the prior incidents. *Alternative Staffing, Inc.*, 2012 IL App (1st) 113332, ¶ 34. The court held that the failure to consider the prior incidents was clearly erroneous. *Id.* It noted that misconduct, disqualifying an employee from employment security, can be found in the cumulative effects of documented warnings of misbehavior. The court stated that the employer submitted sufficient evidence documenting the 11 prior incidents and thus met its burden of proof. *Id.* ¶ 35. Under the standard in *Alternative Staffing*, evidence of Wood's prior documented warnings is sufficient to satisfy Ken's Beverage's burden of proof. *Id.* ¶ 31.

¶ 19       Referee Ott considered Rebhorn's and Mullins's testimony regarding their conversations with dispatchers complaining of Woods abusive behavior. The board, however, ruled that Ken's Beverage did not meet its burden because it failed to call the two dispatchers whose complaints triggered Wood's termination. In so doing, the board clearly erred by requiring a higher evidentiary threshold than that ordinarily required in such cases. The "Director [of the Department of Employment Security] may adopt regulations governing the conduct of hearings held pursuant to any provisions of [the] Act." 820 ILCS 405/2300 (West 2018). Under section 2300, the director's regulations are binding, regardless of whether they conform with "the common law or statutory rules of evidence or other technical rules or procedure" or not. *Id.* The "admission of evidence contrary to the common law rules of evidence [cannot] invalidate any decision made by the Director." *Id.* Applying his discretion, the director held that "[t]echnical rules of evidence do not apply to hearings before Referees." 56 Ill. Adm. Code 2720.250(a), *amended at* 43 Ill. Reg. 6385 (eff. May 14, 2019). A referee may consider "[u]nobjected to hearsay statements" and give them "their natural probative value." *Id.*

¶ 20    We find nothing in the record suggesting that Wood timely objected to the possible hearsay statements contained in Rebhorn's or Mullins's testimony. Once such statements were presented, Referee Ott could "not, on his *** own initiative, refuse to admit [the] evidence or testimony." 56 Ill. Adm. Code 2720.250(b), *amended at* 43 Ill. Reg. 6385 (eff. May 14, 2019). He could only weigh the credibility of each side—which he presumably did. *Id.* The review board, however, rejected his assessment because the evidence was not from eyewitnesses' first-hand accounts. We find this evidentiary ruling clearly erroneous under the standard set in section 2300 and section 2720.250 and, therefore, reverse the decision of the Illinois Department of Employment Security's Board of Review.

¶ 21                              III. CONCLUSION

¶ 22    The judgment of the Illinois Department of Employment Security's Board of Review is reversed.

¶ 23    Reversed.

¶ 24    JUSTICE HOLDRIDGE, specially concurring:

¶ 25    I join the majority's judgment and most of its analysis. I agree that the board of review erred by concentrating only on the final, triggering incidents that prompted the employer's final warning and termination of Wood and by failing to consider documented evidence of Wood's misconduct prior to the final warning. I also agree that the board erred by excluding hearsay statements that Rebhorn and Mullins made during their testimony and by requiring first-hand witness testimony as to all instances of Wood's alleged misconduct. I write separately to clarify one point in the majority's analysis as to the latter issue.

¶ 26    The majority suggests that there is "nothing in the record suggesting that Wood timely objected to the possible hearsay statements contained in Rebhorn's or Mullins's testimony." *Supra*

¶ 20. I disagree. During Mullins's testimony, Wood's counsel told the referee that he had "a continuing objection to the hearsay evidence." The referee interrupted him and stated, "Yeah. Here's the way it works. I'm allowed to hear hearsay but I'm not allowed to rely on it in preparing my decision. *** But you've got your continuing objection." Thus, contrary to the majority's conclusion, the hearsay statements at issue were not "[u]nobjected to hearsay" which the referee was required to admit and to "give *** their natural probative value." (Internal quotation marks omitted.) *Supra* ¶ 19.

¶ 27        Nevertheless, the issue of the admissibility of Mullins's and Rebhorn's hearsay statements is moot in this case because the referee did not rely on those statements in reaching his decision. (The referee expressly noted that fact both in response to Wood's counsel's objection at the hearing and in his final decision.) Accordingly, the referee correctly applied section 2720.250 of the Illinois Administrative Code, which applies in proceedings for unemployment benefits filed with the Illinois Department of Employment Security. That section provides, in relevant part, that the referee "may, but need not, rule on any objection to the introduction of evidence or testimony" but must note any objections and make them part of the record. 56 Ill. Adm. Code 2720.250(a). Because neither the referee nor the board of review relied upon the hearsay statements in reaching their respective decisions, we need not address this issue further on appeal.

¶ 28        In any event, we do not need to rely upon any of the hearsay statements at issue to reverse the board of review's decision. There was sufficient non-hearsay evidence of Wood's misconduct after the employer's July 5, 2017, final warning to justify reversal. As the majority correctly notes, the final warning informed Wood that *any* further misconduct by Wood would result in her termination. Mullins testified that he repeatedly e-mailed Wood warnings about her failure to follow his directives, but Wood ignored his directions on several occasions. At least one of these

10

instances occurred after the final warning. Mullins testified that, when he met with Wood in February 2018 to discuss Wood's misconduct, Wood dismissed the claims against her as "bullshit." That statement constituted misconduct by Wood in defiance of the final warning. In addition, Rebhorn testified that she was present during a meeting in the Fall of 2017 when Wood's supervisors warned Wood about her misconduct and Wood "started yelling." These instances, coupled with documentary evidence of Wood's prior misconduct, justified Wood's dismissal for misconduct. The board of review's contrary conclusion is clearly erroneous.

**No. 3-19-0115**

| | |
|---|---|
| **Cite as:** | *Ken's Beverage, Inc. v. Wood*, 2020 IL App (3d) 190115 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 18-MR-2455; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | Gregory W. Guevara, of Indianapolis, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz and Caleb Rush, of Chicago), for appellee. |