2024 IL App (1st) 221244-U

No. 1-22-1244

Order filed February 2, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ALYCIA PERRYMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 L 50030 |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY, | ) | |
| DIRECTOR OF EMPLOYMENT SECURITY, THE | ) | |
| BOARD OF REVIEW, and RUSH UNIVERSITY | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (The Department of Employment Security, Director of | ) | |
| Employment Security, and the Board of Review, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendants-Appellants). | ) | Judge, presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Where plaintiff was discharged from her job for misconduct, but the record does
                not include evidence supporting the elements of misconduct under the

Unemployment Insurance Act, the circuit court's order reversing the decision of the Board of Review of the Department of Employment Security denying unemployment benefits is affirmed.

¶ 2       The Department of Employment Security (Department), the Director of Employment Security, and the Board of Review (Board) (collectively, defendants) appeal from an order of the circuit court reversing the final administrative decision of the Board, which found that *pro se* plaintiff Alycia Perryman was discharged for misconduct by her employer, Rush University Medical Center (Rush), and was thus ineligible for unemployment benefits under sections 602(A) and 602(A)(3) of the Unemployment Insurance Act (Act) (820 ILCS 405/602(A), (A)(3) (West 2020)).[1] On appeal, defendants contend that the Board properly determined that plaintiff was terminated for misconduct where she failed to follow Rush's policy for reporting absences claimed under the Family and Medical Leave Act (FMLA) (29 U.S.C. §§ 2601 *et seq.* (2022)), and that the circuit court erred in reversing the Board's decision. We affirm.

¶ 3       The following facts are derived from the administrative record, which includes Rush's protest of the unemployment benefits claim and "Record of Employee Discipline" dated June 10, 2021, the claims adjudicator's determination and plaintiff's letter of appeal therefrom, the notice of telephone hearing before a referee, a transcript from the hearing, the referee's decision and plaintiff's letter of appeal therefrom (appending limited medical records documenting her hospitalization from June 1 through 4, 2021), and the Board's decision. The record also contains plaintiff's *pro se* complaint for administrative review, the circuit court's order reversing the Board's decision, and defendants' notice of appeal of the circuit court's order.

---

[1] Rush University Medical Center was a defendant in the proceedings below, but did not participate in this appeal.

¶ 4    Plaintiff began working for Rush as a gynecological oncology patient services representative on September 23, 2019. On April 5, 2021, she was promoted to the role of "Access Specialist 2" and transferred to the hematology/oncology department, where she remained until her termination on June 10, 2021. On June 27, 2021, plaintiff applied for unemployment benefits with the Department. Rush contested the claim, alleging she was terminated for "misconduct," *i.e.*, "unsatisfactory attendance"; that she had "received prior warnings" and knew her job was "in jeopardy"; and that "the final infraction" was her absences from June 1 through June 4, 2021, "when she *** failed to notify the employer's Leave Administrator and the absences were counted as an occurrence."

¶ 5    The Record of Employee Discipline Rush submitted in protesting plaintiff's benefits claim states that she was on probation when she was terminated for "[u]navailability." Although signed by plaintiff, the document specifies that the employee's signature "does not constitute agreement." The document states that on March 16, 2021, plaintiff received a "Level 1" warning for 8.25 "occurrences" and that "[t]he discipline form" for that warning "states that the manager reviewed the Cancer Center Time and Attendance Policy with" plaintiff.[2] The document describes "Level One" disciplinary action as "Documented Verbal Warning," defined as "*Verbal*," and defines a "Level Two Warning" as "*Written*." (Emphases in original.) The document states that plaintiff was thereafter absent on April 23, May 26, and June 1 through 4, 2021, and that she reported these six absences as FMLA leave to her department, but not to Rush's leave administrator, The Hartford, "as required."

---

[2] Neither Rush's discipline form for the March 16, 2021, warning nor any written policy is included in the record on appeal.

¶ 6     After interviewing plaintiff, a claims adjudicator determined that plaintiff's failure to report FMLA leave to The Hartford constituted "misconduct" under section 602(A)(3) of the Act and that she was therefore disqualified from receiving benefits. Plaintiff timely appealed the claims adjudicator's finding.

¶ 7     The Department sent a notice of telephone hearing to plaintiff and Rush's agent, Illinois Health and Hospital Association Unemployment Compensation Administration Program (IHA UCAP) Services, stating that the issues to be addressed included, in relevant part, the timeliness of Rush's protest and plaintiff's appeal, and whether plaintiff's termination was "for "misconduct," citing section 602(A) but not section 602(A)(3).

¶ 8     At the hearing before the referee, Rush practice manager Mitch Cooper testified that plaintiff's initial hire date was September 23, 2019. When plaintiff transferred to Cooper's department, on April 5, 2021, she had 8.25 "occurrences." Cooper agreed that these occurrences indicated plaintiff "missed those days and for whatever reason the employer counted them towards *** violations of [the] attendance policy." The transfer triggered a 90-day probationary period, during which Rush was not required to apply progressive discipline in the event of infractions. At the time of plaintiff's transfer, Rush reviewed with plaintiff its written time and attendance policy, including its requirement that the employee report intermittent FMLA leave to both the department and The Hartford.

¶ 9     After plaintiff transferred to Cooper's department, she took intermittent FMLA leave. On the six dates at issue, plaintiff reported to the department, but not The Hartford, and did not submit "supporting documentation *** within the timeframe for those dates." However, there were "other days" when plaintiff called The Hartford. According to Cooper, "each time there's a date recorded

to" The Hartford, an "automatic notification gets sent" from The Hartford to the employee, reminding him or her to report the missed dates to The Hartford, and plaintiff "would have gotten at least some of those" when she called The Hartford on the other days. Asked whether plaintiff received a written or an oral warning about her absence on April 23 or May 26, Cooper answered in the negative. Asked how an employee's failure to call The Hartford affects operations, Cooper stated it affects "how we assess our employees as a whole."

¶ 10    Examined by the employer representative from IHA UCAP Services, Cooper confirmed that upon plaintiff's transfer to his department she had a prior warning in her file. Cooper, after "pulling up the date," testified the warning was given on March 16, 2021. Asked whether it was in writing, he testified, "[T]he warning was a conversation. It was submitted via writing and it was handed to the employee." Had plaintiff reported the six absences to The Hartford, they would have been excused.

¶ 11    Plaintiff was examined by the referee and testified that before her transfer her previous manager approved the April 23 absence as "PTO." However, plaintiff was not sure whether her May 26 absence was excused. Plaintiff explained that since undergoing surgery the previous winter she had been hospitalized "on and off." On each day she was hospitalized from June 1 through June 4, she informed her manager and "team lead" that she was out on FMLA leave. Regarding her failure to notify The Hartford on those dates, she testified, "Now, that is my fault. I was under medication. I was inebriated." She explained that contacting The Hartford was not on her mind, because she was hospitalized and on pain medication. After being terminated, she called The Hartford and was informed that notification of The Hartford was required the same day or within 24 hours "or *** they would not approve it."

¶ 12     The referee determined that plaintiff was discharged for misconduct in failing to contact The Hartford regarding her absences from work on each of the days June 1 through 4. The referee's decision quoted the two definitions of misconduct in sections 602(A) and 602(A)(3) of the Act and determined that plaintiff was disqualified from benefits under section 602(A).

¶ 13     Plaintiff appealed the referee's decision to the Board.

¶ 14     The Board considered the record without taking additional evidence, and affirmed the referee's decision in an order mailed on January 3, 2022. The Board's decision largely mirrors the referee's factual findings and conclusion, except that, in finding misconduct, the Board cited not only the June absences, but also those in April and May, and further found misconduct under section 602(A)(3) as well as section 602(A).

¶ 15     In its written order, the Board determined that plaintiff violated a reasonable policy that required an employee taking FMLA leave to report not only to her supervisor, but to The Hartford, and that on all six dates she failed to call The Hartford. The Board acknowledged plaintiff's explanation that she was in pain and under medication—evidently referring to her testimony regarding her June absences—but noted that she "was able to call both her manager and team lead" on those dates. In finding plaintiff disqualified from receiving benefits due to termination for misconduct under section 602(A), the Board reasoned that the fact that she followed the policy on other dates demonstrated her "knowledge of the rules," and that she had been "warned or written up for other attendance issues." In finding plaintiff disqualified from receiving benefits due to termination for misconduct under section 602(A)(3), the Board reasoned that she had received a written attendance policy and been "warned for attendance violation" on March 16, 2021.

¶ 16    On January 25, 2022, plaintiff filed a *pro se* complaint for administrative review. The circuit court reversed the Board's decision on July 20, 2022. In its written order, the circuit court reasoned that even if the policy plaintiff allegedly violated—which was not part of the record— was "reasonable," no "misconduct" under section 602(A) was established because the evidence did not show that her failure to report to The Hartford was "deliberate and willful," as that provision requires, where she testified she was incapacitated at the time. See 820 ILCS 405/602(A) (West 2020). The court further found the Board's "*sua sponte*" finding of "misconduct" under section 602(A)(3) was improper and violated plaintiff's procedural due process rights where the notice of telephone hearing did not cite that provision and where, at the hearing, the referee focused solely on the definition of misconduct under section 602(A).

¶ 17    Defendants timely appealed the circuit court's reversal of the Board's decision. They argue that the Board's determinations that plaintiff was discharged for misconduct under sections 602(A) and 602(A)(3) were not against the manifest weight of the evidence or clearly erroneous, that the Board's determination under section 602(A)(3) did not violate her procedural due process rights, and that this court should therefore reverse the circuit court's order and affirm the Board's decision.

¶ 18    Employees who have been discharged for "misconduct" as defined in section 602(A) of the Act and its subparts are ineligible to receive unemployment insurance benefits. *Alternative Staffing, Inc. v. Illinois Department of Employment Security*, 2012 IL App (1st) 113332, ¶ 30; 820 ILCS 405/602(A) (West 2020). A discharged employee bears the burden of establishing his or her eligibility for unemployment insurance benefits. *People v. Petrovic*, 2016 IL 118562, ¶ 28 (citing 820 ILCS 405/500 (West 2012); *Wise v. Department of Employment Security*, 2015 IL App (5th)

130306, ¶ 18). However, "an employer who asserts an employee's disqualification for benefits based on misconduct has the burden of proving such misconduct." *Petrovic*, 2016 IL 118562, ¶ 28.

¶ 19    In an appeal from an administrative review proceeding, we review the decision of the Board rather than the order of the circuit court. *Id.* ¶ 22.

¶ 20    The Administrative Review Law provides that "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." 735 ILCS 5/3-110 (West 2022). Indeed, the Board's factual findings will not be disturbed unless they are against the manifest weight of the evidence. *520 South Michigan Avenue Associates v. Department of Employment Security*, 404 Ill. App. 3d 304, 312 (2010). Under this standard, we will overturn the Board's factual findings only where " 'the opposite conclusion is clearly evident.' " *Id.* at 313 (quoting *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998)). "[T]he opposite conclusion is not clearly evident if there is some evidence of record to support the finding." *Cannici v. Department of Employment Security Board of Review*, 2021 IL App (1st) 181562, ¶ 42. It is not the responsibility of this court, but that of the Board, to weigh the evidence, determine the credibility of witnesses, and resolve conflicts in the testimony. *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 329 (2009). This court may not substitute its judgment for that of the Board. *520 South Michigan Avenue Associates*, 404 Ill. App. 3d at 317.

¶ 21    Where an issue on review concerns only conflicting testimony and witness credibility, the Board's decision should be sustained. *Id.* at 318. Where an administrative agency's decision involves a pure question of law, it is reviewed *de novo. L.A. McMahon Building Maintenance, Inc. v. Department of Employment Security*, 2015 IL App (1st) 133227, ¶ 37. The ultimate issue of

whether an employee was discharged for "misconduct" in connection with his or her work presents a mixed question of law and fact to which the "clearly erroneous" standard of review applies. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001); *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 327 (2009). Under this standard, the Board's finding of "misconduct" will be deemed clearly erroneous only where the record leaves this court with the definite and firm conviction, based on the entire record, that a mistake has been made. *Cannici*, 2021 IL App (1st) 181562, ¶ 43.

¶ 22 Section 602(A) of the Act provides that a terminated employee is disqualified from receiving benefits under specified conditions where "he has been discharged for misconduct connected with his work." 820 ILCS 405/602(A) (West 2020). Section 602(A) defines "misconduct" as follows:

"[T]he deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." *Id.*

¶ 23 Section 602(A) also defines "misconduct" to include violations of an employer's attendance policies. Specifically, section 602(A)(3) provides in relevant part:

"The previous definition notwithstanding, 'misconduct' shall include any of the following work-related circumstances:

\*\*\*

3. Knowing, repeated violation of the attendance policies of the employer that are in compliance with State and federal law following a written warning for an attendance

violation, unless the individual can demonstrate that he or she has made a reasonable effort to remedy the reason or reasons for the violations or that the reason or reasons for the violations were out of the individual's control. Attendance policies of the employer shall be reasonable and provided to the individual in writing, electronically, or via posting in the workplace." 820 ILCS 405/602(A)(3) (West 2020).

¶ 24    We address first the Board's determination that plaintiff is disqualified from benefits because she was discharged for "misconduct" under section 602(A)(3). In its order, the Board found:

> "Because [plaintiff] had received a written attendance policy and had previously warned [*sic*] for attendance violation March 16, 2021, under section 602[(A)(3)], her violations of the attendance policy of April 23, May 25, June 2, June 3, and June 4, 2021 [*sic*] are considered misconduct. The claimant is therefore *** disqualified from receiving benefits under Sections [*sic*] 602[(A)(3)] of the Act."[3]

¶ 25    Having carefully reviewed the Board's final order and the record, we conclude that the Board's finding of "misconduct" under section 602(A)(3) is clearly erroneous. Section 602(A)(3) requires a finding that plaintiff received "a *written* warning for an attendance violation." (Emphasis added.) See *id.* The Board found that plaintiff "had been previously warned, in writing, for attendance violations on March 16, 2021." However, the record does not disclose any competent evidence that plaintiff received a *written* warning on that date or at any time before her termination.

---

[3] According to the record before this court, the absences at issue occurred on April 23, May 26, June 1, June 2, June 3, and June 4, 2021.

¶ 26    Cooper's testimony does not support the Board's finding that plaintiff received a written warning. Under examination by the hearing officer, Cooper said plaintiff was not warned while under his supervision. Questioned by Rush's representative, Cooper "pull[ed] up the date" of the March 16 warning, described it as "a conversation," and said "[i]t was submitted via writing and it was handed to the employee." However, Cooper neither gave the March 16 warning nor documented the precipitating 8.25 occurrences, as those events predated plaintiff's transfer to his department. The record is clear that, in representing that documentation of the verbal warning "was handed" to "the employee," Cooper lacked firsthand knowledge of the event. By itself, Cooper's testimony therefore does not establish that a prior "written warning" was issued. See 56 Ill. Adm. Code 2720.250(a) (2019) (although at a hearing before a referee "[u]nobjected to hearsay statements may be considered and given their natural probative value[,] *** the decision of the [r]eferee will be based on the preponderance of the credible, legally competent evidence in the record").

¶ 27    Moreover, the Board's conclusion that plaintiff received a *written* warning is rebutted by the limited documentary evidence that Rush produced in protesting plaintiff's benefits claim. The Record of Employee Discipline identifies the March 16 warning as a "Level 1" action and describes "Level One" as "Documented Verbal Warning," defining the same as "*Verbal.*" (Emphasis in original.) The document defines a "Level Two Warning" as "*Written.*" (Emphasis in original.) The record does not establish that the March 16 warning was a "written warning," as it is not included in the record and Rush's documentation expressly identifies the level of that warning as verbal and distinguishes a verbal warning from a written one.

¶ 28    We therefore find that the Board's conclusion that plaintiff is disqualified from receiving benefits under section 602(A)(3) because she was terminated for "misconduct" as defined therein is clearly erroneous. See 820 ILCS 405/602(A)(3) (West 2020). Given our conclusion, we decline to address whether the other elements of section 602(A)(3) are met, or whether, as the circuit court concluded, plaintiff received inadequate notice of a potential violation of that provision in advance of the telephone hearing.

¶ 29    We next consider the Board's determination that, as the referee found, plaintiff was terminated for "misconduct" under section 602(A) and thus was disqualified from receiving benefits under that provision. See 820 ILCS 405/602(A) (West 2020). "[M]isconduct" under section 602(A) consists of three elements: (1) the employer had a reasonable work policy, (2) the employee committed a "deliberate and willful" violation of such policy, and (3) the violation either harmed the employer or—relevant here—was repeated by the employee despite a prior warning or instruction to cease the conduct. *Id.*; *Oleszczuk v. Department Employment Security*, 336 Ill. App. 3d 46, 51 (2002). In order for employment benefits to be denied, these elements must be established by competent evidence. *Petrovic*, 2016 IL 118562, ¶ 26.

¶ 30    After carefully reviewing the record, we find the Board's conclusion that plaintiff's violations were "deliberate and willful" is against the manifest weight of the evidence, such that the second element of "misconduct" under section 602(A) is lacking.

¶ 31    We begin by noting that, whereas the referee cited only the June violations in finding "misconduct" under section 602(A), the Board cited the April 23 and May 26 violations as well. "Misconduct can be premised on either a single incident of a violation of an employer's rules that triggered the employee's discharge or the employee's cumulative violations of the employer's

rules taken as a whole." *Ken's Beverage, Inc. v. Wood*, 2021 IL App (3d) 190115, ¶ 14 (citing *Alternative Staffing, Inc. v. Illinois Department of Employment Security*, 2012 IL App (1st) 113332, ¶ 30). However, Rush terminated plaintiff only after the June violations, and nothing in the record indicates that Rush's policy (absent from the record) permitted termination based on the April 23 and May 26 violations alone. Indeed, in contesting plaintiff's entitlement to benefits, Rush termed the June absences the "final infraction." Thus, to sustain the Board's finding that plaintiff was discharged for misconduct under section 602(A), there must be some evidence that the June violations in particular were "deliberate and willful." See 820 ILCS 405/602(A) (West 2020).[4]

¶ 32    "Willful misconduct occurs where an employee is aware of a company rule and *consciously* disregards it." (Emphasis added.) *Ken's Beverage, Inc.*, 2021 IL App (3d) 190115, ¶ 14 (citing *Alternative Staffing, Inc.*, 2012 IL App (1st) 113332, ¶ 31). Thus, this court previously determined that a nurse's inadvertently falling asleep during an executive meeting after taking an aspirin was not deliberate and willful. *Washington v. Board of Review,* 211 Ill. App. 3d 663, 667-68 (1991) (affirming circuit court's order reversing the Board's decision that the plaintiff was disqualified from receiving benefits). Similarly, a pattern of oversleeping by an employee did not constitute deliberate and willful violation of the employer's attendance policy where the record gave no indication as to the circumstances of the infractions, save for the failure of the employee's alarm clock to sound. *Wrobel v. Illinois Department of Employment Security*, 344 Ill. App. 3d 533, 538-

---

[4] The referee, and then the Board, noted that plaintiff demonstrated "knowledge of the rules" or policy by having reported other dates of FMLA leave to The Hartford, suggesting the referee and the Board found her violations "deliberate and willful" based on this prior reporting. Although such prior reporting would have necessarily predated the June violations, nothing in the record indicates it preceded the April 23 or May 26 violations.

39 (2003) (reversing the Board's decision that the plaintiff was disqualified from receiving benefits) (citing 820 ILCS 405/602(A) (West 2002)).

¶ 33    Here, plaintiff admitted mere negligence, not willful misconduct, in testifying that her failure to report the June absences to The Hartford was her "fault." She testified that at the time of those violations she was hospitalized, "inebriated," and on pain medication, such that she was not thinking of the policy. The Board concluded that the June violations were deliberate and willful because she was "able" to call her employer and team lead. However, the fact that she took this step is not evidence that she willfully failed to follow a policy that, according to testimony at the hearing, required that she also contact a third-party leave administrator. See *Wrobel*, 344 Ill. App. 3d at 539 ("One does not typically forget to do something intentionally; forgetting is a matter of carelessness."). Further, based on our review of the record, nothing therein indicates that plaintiff's medical and mental state was such that she could have contacted The Hartford within the period the policy required in order to avoid the violations.

¶ 34    Even assuming the June violations were deliberate and willful, however, we find no evidence to support the Board's finding that the third element for misconduct under section 602(A) is met on the basis of repeated policy violations after a prior warning or explicit instruction by the employing unit. See 820 ILCS 405/602(A) (West 2020); *Oleszczuk*, 336 Ill. App. 3d at 51.[5]

¶ 35    We find *Zuaznabar v. Board of Review of Department of Employment Security*, 257 Ill. App. 3d 354 (1993), instructive. In *Zuaznabar*, this court held that employer Greyhound's prior warnings to a discharged bus driver regarding his prior "driving violations" did not support a

---

[5] Defendants do not argue, nor did the Board find, that "harm" to the employing unit or other employees resulted from plaintiff's policy violations, which is the alternative basis for establishing the third element of misconduct under section 602(A). See 820 ILCS 405/602(A) (West 2020).

finding that he was discharged for misconduct under section 602(A), where Greyhound terminated him for making unauthorized stops and failed to provide "evidence regarding the nature of the [prior] warnings." *Id.* at 355, 358. Based on the record, the court found no evidence that the driver had received "warnings specific to the conduct for which he was discharged," whereas "the Act is clear that prior warnings must involve a 'warning or other explicit instruction' that relates to 'such violation.' " *Id.* at 358 (quoting Ill. Rev. Stat. 1987, ch. 48, par. 432); see also 820 ILCS 405/602(A) (West 2020) (containing the same language).

¶ 36    Similarly, here, Cooper testified that the March 16 warning was due to 8.25 "occurrences" predating plaintiff's transfer that related to absences that were "for whatever reason" deemed "violations" of the time and attendance policy. Neither the discipline form for the warning nor the policy is in the record. However, Rush's Record of Employee Discipline shows that tardiness or early departure was an "occurrence" worth ".25," indicating that occurrences could accrue for violations seemingly unrelated to FMLA leave reporting. Moreover, we have identified no evidence in the record indicating that plaintiff was warned, on March 16 or at any other time, regarding violations related to FMLA reporting.[6] We thus find that the Board's conclusion that plaintiff received a prior warning within the meaning of section 602(A) is against the manifest weight of the evidence, and that the Board's determination that she was discharged for misconduct under section 602(A) was clearly erroneous.

---

[6] Although Cooper testified that plaintiff would have received automated reminders of the dual-reporting requirement when she reported to The Hartford on other dates, section 602(A) requires "a warning or other explicit instruction *from the employing unit.*" (Emphasis added.) 820 ILCS 405/602(A) (West 2020). Even if The Hartford's automated messages, which are not in the record, could be construed as such, Cooper's testimony does not indicate that he had firsthand knowledge that plaintiff actually received them.

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court that reversed the Board's denial of benefits.

¶ 38    Circuit court order affirmed.

¶ 39    Board decision reversed.